**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| WILLIE MCNAIR, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | Case No. 2:06-cv-695-WKW |
| | ) | |
| RICHARD ALLEN, et al., | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |
| _____ | ) | |
| JAMES CALLAHAN, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | Case No. 2:06-cv-919-WKW |
| | ) | |
| RICHARD ALLEN, et al., | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |

**PLAINTIFFS' SUPPLEMENTAL AUTHORITY
IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE
PLEADINGS AND ALTERNATIVE MOTION FOR SUMMARY JUDGMENT
REGARDING STATUTE OF LIMITATIONS**

Pursuant to this Court's Order dated April 17, 2007 granting leave to file supplemental

authority in opposition to Defendants' Motion for Judgment on the Pleadings and Alternative

Motion for Summary Judgment Regarding Statute of Limitations dated March 14, 2007, Plaintiff

hereby submits a copy of such supplemental authority (*Harbison v. Little, et al.*, No. 3:06-cv-

01206 (M.D. Tenn. January 29, 2007)) as Exhibit A hereto.

Date:   April 18, 2007

　　　　　/s/ Vincent R. FitzPatrick, Jr.
VINCENT R. FITZPATRICK, JR.
HEATHER K. MCDEVITT
STEPHANIE COHEN
Bar Numbers (SDNY):
VF2907; HM9973; SM7006
Counsel for Plaintiff Willie McNair

White & Case LLP
1155 Avenue of the Americas
New York, NY  10036
Telephone:  (212) 819-8200
Facsimile:  (212) 354-8113
vfitzpatrick@whitecase.com
hmcdevitt@whitecase.com
stephcohen@whitecase.com

- and -

RANDALL S. SUSSKIND (SUS002)
CATHLEEN I. PRICE (PRI056)
Counsel for Plaintiffs Willie McNair
and James Callahan

Equal Justice Initiative of Alabama
122 Commerce Street
Montgomery, AL  36104
Telephone: (334) 269-1803
Facsimile: (334) 269-1806
rsusskind@eji.org
cprice@eji.org

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on April 18, 2007, a copy of the foregoing was filed electronically with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to the

following:  J. Clayton Crenshaw and James W. Davis.

                                           <u>/s/ Stephanie Cohen</u>
                                         STEPHANIE COHEN
                                         Bar Number (SDNY):
                                         SM7006
                                         Counsel for Plaintiff

                                         White & Case LLP
                                         1155 Avenue of the Americas
                                         New York, NY  10036
                                         Telephone:  (212) 819-8200
                                         Facsimile:  (212) 354-8113
                                         stephcohen@whitecase.com

**EXHIBIT A**

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| EDWARD JEROME HARBISON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:06-cv-01206 |
| | ) | Judge Trauger |
| GEORGE LITTLE, in his official capacity as | ) | |
| Tennessee's Commissioner of Correction; | ) | |
| RICKY BELL, in his official capacity as Warden, | ) | |
| Riverbend Maximum Security Institution; | ) | |
| JOHN DOE PHYSICIANS 1-100; | ) | |
| JOHN DOE PHARMACISTS 1-100; | ) | |
| JOHN DOE MEDICAL PERSONNEL 1-100; | ) | |
| JOHN DOE EXECUTIONERS 1-100; and | ) | |
| JOHN DOES 1-100, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the court is the Motion to Dismiss filed by defendants George Little,

Ricky Bell, and the "TDOC [Tennessee Department of Corrections] Employee John Does"

(Docket No. 15), to which the plaintiff has responded (Docket No. 18). For the reasons

discussed herein, the defendants' motion will be denied in part and granted in part.

1

## FACTS and PROCEDURAL HISTORY

The plaintiff is a condemned inmate at Riverbend Maximum Security Institution ("RMSI") in Nashville, Tennessee.[1]  On July 17, 2006, the Tennessee Supreme Court scheduled the plaintiff's execution for October 11, 2006.  On July 24, 2006, the plaintiff sent Commissioner George Little a letter that expressed his objections to Tennessee's lethal injection protocol.[2]  On August 2, 2006, Little denied the plaintiff's objections and his request for relief.  On August 16, 2006, the Tennessee Supreme Court rescheduled the plaintiff's execution for February 22, 2007.

Tennessee's lethal injection protocol was written by Warden Ricky Bell who, according to the plaintiff, "has no medical or scientific training nor a college education."  (*See* Docket No. 1 ¶ 14.)  No member of the medical community was involved in the creation of this protocol, which was "adopted without any medical research or review to determine that a prisoner would not suffer pain beyond that attendant to the extinguishment of life."  (*See id.*)

The protocol requires the participation of "the Commissioner, the Warden, the Deputy Warden, the Administrative Assistant, the Death Watch Supervisor and assigned officers, a Chaplain, a Medical Doctor and associate, an 'Execution Team,' an 'IV Team,' and an 'Extraction Team.'"[3]  (*See id.* ¶ 15.)  The defendants, claiming a privilege under Tenn. Code Ann. § 10-7-504(h) (2005), have refused to reveal the identities of any of those participants

---

[1] Unless otherwise noted, all facts have been drawn from the plaintiff's Complaint (Docket No. 1) and from his Response to Motion to Dismiss of Defendants Little and Bell (Docket No. 18).

[2] Tennessee's lethal injection protocol is not yet a part of the record in this case.  While the plaintiff's Complaint does not reveal the factual bases of his statements about the protocol, the defendants have not contested the accuracy of those statements.

[3] The protocol is silent as to how these teams are to be selected and whether their members are to have any special training or qualifications.

except for the warden.

The protocol prescribes the sequence of events that must take place during an execution by lethal injection. According to its provisions, Warden Bell or his assistant, accompanied by the "Extraction Team" will, at an appointed time, remove the plaintiff from his cell, secure him to a gurney, and take him to a designated area in the "death chamber," where the execution is to take place. (*See id.* ¶ 22.) Someone, "most likely [Warden] Bell," will then prepare syringes with the chemicals to be used for the lethal injection. (*See id.* ¶ 23.) The syringes will not be labeled with the names of the chemicals. Someone, "most likely [Warden] Bell," will then mix powdered sodium pentothal, one of the chemicals to be used during the execution, with water. (*See id.* ¶ 24.) Once in liquid form, sodium pentothal "starts to deteriorate immediately." (*Id.*)

Intravenous ("IV") technicians then will insert a catheter into each of the plaintiff's arms, attach tubing, and start an IV of saline solution.[4] They will then leave the chamber. The catheters will then be connected to an injection delivery device, which is located in a room adjacent to the death chamber. On Warden Bell's signal, the executioner will inject the following drugs into the delivery device in the amount and sequence indicated:

1.      sodium pentothal (also known as sodium thiopental): fifty milliliters (five grams diluted by forty-eight milliliters of diluent);

2.      saline: fifty milliliters;

3.      pancuronium bromide (also known as Pavulon): fifty milliliters;

---

[4] A physician who is able to perform a "cutdown procedure" if the IV technicians are unable to find an adequate vein in which to insert the catheters is to be waiting in a designated area, but is not to be present during the catheterization process. (*See* Docket No. 1 ¶ 26.) The protocol is silent as to whether this physician must have any particular qualifications.

3

4.      pancuronium bromide (also known as Pavulon): fifty milliliters;

5.      saline: fifty milliliters;

6.      potassium chloride: fifty milliliters; and

7.      potassium chloride: fifty milliliters.

All of these drugs, which will have been obtained per Warden Bell's request to the TDOC, are to be administered within a span of two to two and one-half minutes. Five minutes after the drugs have been injected into the tubes, a physician will examine the plaintiff and pronounce whether he has died. If the plaintiff is still alive, the process will be repeated.

According to the plaintiff,[5] sodium pentothal, the first drug in the sequence, is a short-acting barbiturate used for its alleged anesthetic effects. It is used when performing surgeries because it enables an anesthesiologist quickly to awaken a patient, should surgical complications arise. The plaintiff claims that "[s]everal regularly prescribed drugs at [RMSI] interfere with the ability of sodium pentothal to act properly as an anesthetic." (*See* Docket No. 1 ¶ 11 (noting that prisoners are permitted to take Valium shortly before their execution, which may interfere with sodium pentothal's effectiveness).) The plaintiff claims that, when administered according to the Tennessee protocol, the dosage of this drug used may not completely anesthetize an inmate undergoing lethal injection, even without the potential interference of other prescribed drugs such as Valium.

The second drug, pancuronium bromide, is a neuromuscular blocking agent that paralyzes

---

[5]The following descriptions of the drugs used during the lethal injection protocol and their effects are per the plaintiff's depictions. (*See* Docket No. 1 ¶¶ 40-77.) Similar descriptions have been used, however, in prior cases involving the same drugs. *See, e.g., Morales v. Hickman*, 438 F.3d 926, 928-29 (9th Cir. 2006); *Abdur'Rahman v. Bredesen*, 181 S.W.3d 292, 302 (Tenn. 2005).

4

an individual but does not affect his brain or nervous system. Accordingly, it does not impact

consciousness or the ability to think or to feel pain. It does, however, paralyze the diaphragm,

which makes breathing impossible. It also paralyzes all skeletal muscles, including those in an

individual's face, such that an individual who has been injected with this drug would be unable to

show expressions of pain or terror, should they be experienced. Tennessee has prohibited the use

of pancuronium bromide in euthanizing animals. The plaintiff claims that the use of this drug to

paralyze a condemned inmate "greatly increases the risk that a conscious prisoner will be

subjected to a painful and protracted death." (*See id.* ¶ 63.)

Potassium chloride, the third drug, causes cardiac arrest. Because it activates all nerve

fibers in the venous system, this drug, used alone, produces extreme pain. The plaintiff asserts

that, if he is conscious during the administration of this drug, the pancuronium bromide will

prevent him from expressing this pain. According to the plaintiff, "[t]he person being lethally

injected under Tennessee's protocol actually dies from the suffocation caused by the pancuronium

bromide and the resulting anoxic state, and not from cardiac arrest due to the administration of

potassium chloride." (*See id.* ¶ 78.)

Using 42 U.S.C. § 1983 as a vehicle for his claims, the plaintiff seeks (1) temporary,

preliminary, and permanent injunctive relief to prevent the defendants from executing him under

Tennessee's current lethal injection protocol; (2) a judgment declaring the use of pancuronium

bromide to be unconstitutional and enjoining the defendants from its dispensation, procurement,

or use; and (3) a declaration that the current protocol is unconstitutional under the Eighth, Ninth,

and Fourteenth Amendments and that, as such, its use will be enjoined.

The defendants have moved to dismiss the plaintiff's claims on the grounds that (1) the

plaintiff has been dilatory in filing his Complaint seeking equitable relief; (2) the statute of

5

limitations bars the plaintiff's action; (3) the plaintiff's challenge to Tennessee's lethal injection protocol has already been adjudicated and rejected; and (4) the plaintiff has failed to state an equal protection claim. (*See* Docket No. 15 at 1-2.)

## I.    The plaintiff has not been dilatory in filing his Complaint.

The defendant alleges that this case must be dismissed because the plaintiff has delayed inexcusably in bringing his challenges to the execution protocols.  In determining whether or not to grant a stay of execution, the Sixth Circuit has held that "equity [does] not permit the consideration of a claim" that has been needlessly and inexcusably withheld.  *In re Sapp*, 118 F.3d 460, 464 (6th Cir. 1997).  Indeed, the Sixth Circuit has repeatedly reversed stays where the plaintiff's undue delay has imposed upon the state's execution schedules.  *See Alley v. Little*, 181 Fed. App'x 509, 513 (6th Cir. 2006); *Hicks v. Taft*, 431 F.3d 916, 916-17 (6th Cir. 2005); *see also White v. Johnson*, 429 F.3d 572, 574 (5th Cir. 2005) ("'Given the State's significant interest in enforcing its criminal judgments, there is a strong equitable presumption against' last minute equitable requests.") (quoting *Nelson v. Campbell*, 541 U.S. 637, 650 (2004)).  This case makes no such request. The plaintiff has not moved for a stay of execution, and the schedule established at the status conference held January 25, 2007 allows for the adjudication of the plaintiff's claims in advance of his February 22, 2007 execution date.   The State's significant interest in enforcing its criminal judgments will not be impeded by this case.

Therefore, the court must determine whether, although the plaintiff filed his claims well enough in advance to avoid the necessity of a stay, he nevertheless so unduly delayed in filing as to require dismissal.  The Sixth Circuit has been quite clear that—with regard to inmates seeking stays—unreasonable delay is fatal to a plaintiff's claims.  *See Alley*, 181 Fed. App'x at 513;

6

*Hicks*, 431 F.3d at 916. But it has not provided the court with a standard for determining when delay becomes unreasonable, and it has not addressed the issue at all in the absence of a request for a stay.

At least one other circuit has held that, for plaintiffs seeking stays, dismissal is required where "the inmate could have brought the action at an earlier time, which would have allowed the court to consider the merits without having to utilize last minute requests." *See White v. Johnson*, 429 F.3d at 574. That is an unworkable standard. The inquiry cannot be whether the inmate "could have brought the action at an earlier time." *See id.* Every case on this court's docket could conceivably have been brought at an earlier time, and yet this court has a duty to exercise jurisdiction over those cases. *See Allegheny County v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959) (noting "the duty of a [d]istrict [c]ourt to adjudicate a controversy properly before it" in analyzing abstention doctrines). Particularly where, as in this case, the court's schedule allows for determination of the plaintiff's claims in advance of his execution date, dismissal is not warranted simply because the claims could have been brought earlier. *See Monge v. California*, 524 U.S. 721, 732 (1998) (noting the "vital importance" of decisions made in the death penalty context).

On July 17, 2006, the Tennessee Supreme Court set October 11, 2006, as the date for the plaintiff's execution. Two days later, on July 19, 2006, the plaintiff informed Commissioner George Little, via letter, of his objections to the current lethal injection protocol. On August 2, 2006, Commissioner Little informed the plaintiff, via letter, that the lethal injection protocol would not be altered and, on August 15, 2006, the Tennessee Supreme Court moved the execution date from October 11, 2006 to February 22, 2007. The plaintiff filed this case on December 19, 2006.

7

The issue as to when the plaintiff's claims first became ripe is not before the court; however, the Sixth Circuit has recently suggested that a plaintiff's Eighth Amendment claims may become ripe at the establishment of his first execution date. *See Alley*, 181 Fed. App'x at 513 ("The threat of the grievous harms of lethal injection loomed at least since the establishment of the 2004 execution date."). Assuming that the plaintiff's claims first became ripe on July 17, 2006, he has delayed exactly 155 days in filing his case. Considering the time necessary for a plaintiff to find legal representation and for counsel to investigate, research and substantiate the plaintiff's claims and then to put those claims into the form of a legal complaint, the court does not find a delay of 155 days to be so unreasonable as to require dismissal of the plaintiff's claims on the basis of undue delay. *See Patton v. Bearden*, 8 F.3d 343, 347 (6th Cir. 1993) ("The defense of laches requires an inexcusably long delay in commencing the action which causes prejudice to the other party.").

## II. The plaintiff's action is not barred by the state of limitations.

The defendants also move to dismiss the plaintiff's claims as barred by the applicable statute of limitations. The Sixth Circuit has held that the one-year statute of limitations set forth in Tenn. Code. Ann. § 28-3-104(3) applies to all § 1983 actions brought within the state of Tennessee. *See Berndt v. Tennessee*, 796 F.2d 879, 883 (6th Cir. 1986); *Cox v. Shelby State Cmty. Coll.*, 48 Fed. App'x 500, 507 (6th Cir. 2002).

As a preliminary matter, the plaintiff asserts that, because the defendants have raised the statute of limitations issue in a Rule 12(b)(6) motion to dismiss and not in an answer, dismissal is appropriate only if it appears on the face of his Complaint that the limitation period has expired. The Sixth Circuit has held that, under Rule 12(b)(6), "[d]ismissal of a complaint because it is

8

barred by the statute of limitations is proper when 'the statement of the claim affirmatively shows that the plaintiff can prove *no* set of facts that would entitle him to relief.'" *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 946 (6th Cir. 2002) (quoting *Duncan v. Leeds*, 742 F.2d 989, 991 (6th Cir. 1984)) (emphasis in original); *see also M.S. Chambliss v. Coca-Cola Bottling Corp.*, 274 F. Supp. 401, 408 n.14 (E.D. Tenn. 1967) ("It now seems to be well-settled that, if the failure to comply with a limitations period appears on the face of the complaint, that defect may be raised by a motion to dismiss.").

The plaintiff's Complaint, on its face, does not demonstrate that the statute of limitations bars the plaintiff's claims. However, the defendants have sought to marshal the discovery rule to demonstrate that the statute of limitations must necessarily have been triggered over a year before the plaintiff filed this action. Under the discovery rule, "[t]he statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Ball v. Union Carbide Corp.*, 385 F.3d 713, 722-23 (6th Cir. 2004); *see also Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984). Typically the discovery rule extends the limitations period past the point that an injury has occurred, to the point that it is discovered or should reasonably be discovered. *Hicks v. Hines Inc.*, 826 F.2d 1543, 1545 (6th Cir. 1987) (citing *Urie v. Thompson*, 337 U.S. 163, 165 (1949) (first defining the discovery rule as extending the statute of limitations period in an occupational injury action)); *Sevier*, 742 F.2d at 273 (the statute is triggered when the plaintiff becomes "aware of facts sufficient to put a reasonable person on notice that he *has suffered* an injury as a result of wrongful conduct") (emphasis added).

Utilizing the discovery rule to defeat a claim for prospective injunctive relief where no injury has yet occurred—on the basis that the plaintiff should have anticipated his future injury

9

at some point before he did anticipate it—would be a novel application of that doctrine. *See Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996) ("Under federal law as developed in this Circuit, the statute of limitations period begins to run when the plaintiff knows or has reason to know *that the act providing the basis of his or her injury has occurred.*") (emphasis added). The court will not take the opportunity to apply the discovery rule in this novel fashion, where neither the injury nor the act providing the basis for the injury has yet occurred.

Further—aside from the fact that the plaintiff has yet to suffer the injuries alleged in his Complaint—it is not at all clear on the face of the Complaint when the plaintiff discovered that he would suffer those injuries. The defendant alleges that the plaintiff must have known about the lethal injection protocol as early as April 2000, when the lethal injection protocol was used in the execution of Robert Glen Coe. However, regardless of the plaintiff's awareness or lack of awareness of Robert Glen Coe's fate, knowledge, in the abstract, of Tennessee's lethal injection protocol cannot have alerted the plaintiff to his own specific cause of action. For instance, Tennessee might well have altered the protocol after the Coe execution, such that a different protocol—one to which the plaintiff had no objection— would apply to his execution.

A statute of limitations period cannot begin to run before the time at which the plaintiff could file a justiciable claim to prevent that injury. *See Ruff v. Runyon*, 258 F.3d 498, 502 (6th Cir. 2001) (holding that a *Bivens* claim "did not accrue until the charges against [the] plaintiffs were finally dismissed because prior to that time, plaintiffs did not 'know' of their injury for purposes of the statute of limitations"); *see also Shamaeizadeh v. Cunningham*, 182 F.3d 391, 396 (6th Cir. 1999) (holding that the statute of limitations in a § 1983 action could not begin to run until disposition of a related criminal proceeding, because until that time, the § 1983 claims "have not yet accrued.").

10

The plaintiff did not have a justiciable claim merely by virtue of the fact of Robert Glenn Coe's execution. The Supreme Court has held that "[i]t goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). An actual case or controversy requires "'a personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions.'" *Id.* (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). Further, "[a]bstract injury is not enough," but instead a plaintiff must show that he or she "has sustained or is immediately in danger of sustaining some direct injury," and that injury must be "real and immediate," not "conjectural or hypothetical." *Lyons*, 461 U.S. at 101-02 (internal quotations omitted).

The plaintiff was not "immediately in danger of sustaining some direct injury," *id.*, in April 2000 merely by virtue of the fact that the state had executed a different prisoner by means of a particular lethal injection protocol. Mr. Coe's execution rendered the plaintiff's prospective injury neither real nor immediate. On the face of the Complaint, it cannot be said that the plaintiff discovered his injury over a year before he filed this case on December 19, 2006. Even if the court were to apply the discovery rule in the novel fashion suggested by the defendants, it could not dismiss this action on that basis.

## III.    The plaintiff's challenge to Tennessee's lethal injection protocol is not precluded by an earlier decision of the Tennessee Supreme Court nor are the facts that he has asserted insufficient to warrant relief.

The defendants also move to dismiss the plaintiff's Eighth Amendment and due process challenges to Tennessee's lethal injection protocol on the grounds that (1) the Tennessee

11

Supreme Court in 2005 adjudicated and rejected such a challenge; and (2) the facts of the plaintiff's case are "insufficient to warrant relief" and, as such, his claims should be "summarily dismissed on the merits." (*See* Docket No. 16 at 9 (citing *Abdur'Rahman v. Bredesen*, 181 S.W.3d 292 (Tenn. 2005), *cert denied*, 126 S.Ct. 2288 (2006)).) Thus, as noted by the plaintiff, the defendants appear to base their arguments about preemption on two separate grounds: (1) the notion that the plaintiff's claim is precluded by the Tennessee Supreme Court's decision in *Abdur'Rahman*; and (2) the assertion that the plaintiff's claims fail under the conventional motion to dismiss standard. (*See* Docket No. 18 at 14-15.) The court will address each of these grounds in turn.

### A.    *The Tennessee Supreme Court's decision in Abdur'Rahman does not preclude the plaintiff from bringing his claim.*

The defendants claim that, because "Tennessee's highest court has . . . already squarely addressed and rejected the same constitutional challenges to the state's lethal injection protocol that the plaintiff now presents to this [c]ourt," this court need not revisit the plaintiff's arguments. (*See* Docket No. 16 at 9-11 (citing *Abdur'Rahman v. Bredesen*, 181 S.W.3d 292 (Tenn. 2005).) Although the plaintiff describes the defendants' arguments as being based on both *res judicata* [claim preclusion] and collateral estoppel [issue preclusion], he argues only against claim preclusion. To the extent that the defendants are asserting that the plaintiff's claims are barred by claim and/or issue preclusion, this assertion fails.[6]

---

[6]If the defendants, instead, mention the *Abdur'Rahman* case only because it qualifies as unbinding precedent that is relevant to this court's ultimate decision, such argument is more properly reserved for the later stages of this case. (*See* Docket No. 16 at 11 (recognizing, but not refuting, the plaintiff's likely contention that "this state court precedent is merely persuasive authority and, thus, not binding on this [c]ourt).)

12

      *1.     The plaintiff's claims are not barred by claim preclusion.*

A claim will be barred by prior litigation only if all of the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action that was litigated or that should have been litigated in the prior action; and (4) an identity of the causes of action. *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997).

The defendants do not even argue—and, indeed, common sense dictates otherwise—that privity exists between the plaintiff here and the plaintiff in *Abdur'Rahman*. In addition, they do not allege that the plaintiff here qualifies as a person "represented" by the plaintiff in that case. *See id.* (indicating the manner in which one person might be considered to be "represented" by another party). As such, the defendants have failed to demonstrate the existence of the second factor in the claim preclusion analysis, *i.e.*, that this case is a "subsequent action between the same parties or their privies." The plaintiff's claim, therefore, is not subject to claim preclusion.

      *2.     The plaintiff's claims are not barred by issue preclusion.*

Under the doctrine of issue preclusion, federal courts are generally required to give preclusive effect to state-court judgments whenever the courts of the state from which the judgment emerged would do so. *See Haring v. Prosise*, 462 U.S. 306, 313 (1983) (internal citation omitted). Under Tennessee law, the party seeking to invoke the doctrine must demonstrate that (1) the issue to be precluded is identical to the issue decided in the earlier suit; (2) the issue to be precluded was actually litigated and decided on its merits in the earlier suit; (3) the judgment in the earlier suit has become final; (4) the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier suit; and (5) the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier suit to

13

litigate the issue to be precluded. *See Beaty v. McGraw*, 15 S.W.3d 819, 824-25 (Tenn. Ct. App. 1998).

A brief examination of these factors reveals that the defendants have not demonstrated the existence of the fourth or the fifth factor.[7] As noted under the claim preclusion analysis above, there is no basis for the claim that privity somehow exists between the plaintiff here and the plaintiff in *Abdur'Rahman*. Moreover, the plaintiff here had no full and fair opportunity to litigate, in the *Abdur'Rahman* case, the issues he now raises. Thus, the notion that the plaintiff's claims fail under the doctrine of issue preclusion has no merit.

**B.    *The plaintiff has stated a claim upon which relief could be granted.***

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will accept as true the facts as the plaintiff has pleaded them. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002); *Performance Contracting, Inc. v. Seaboard Surety Co.*, 163 F.3d 366, 369 (6th Cir. 1998). "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Performance Contracting*, 163 F.3d at 369.

The court will not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Myers v. United States*, 636 F.2d 166, 168-69 (6th Cir. 1981) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). This narrow inquiry is based on whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can

---

[7]The plaintiff also makes what may be meritorious arguments that the issues in this case are not identical to those litigated in *Abdur'Rahman*. (*See* Docket No. 18 at 16.)

14

ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Indeed it may appear on the face of the pleadings that recovery is very remote and unlikely but that is not the test." *Scheuer*, 416 U.S. at 236. Rather, challenges to the merits of a plaintiff's claim should be "dealt with through summary judgment under Rule 56." *Swierkiewicz*, 534 U.S. at 514.

The defendants devote the majority of their argument as to why the plaintiff's claims "should be dismissed on the merits, as the facts are insufficient to warrant relief" to detailed descriptions of the Tennessee Supreme Court's decision in *Abdur'Rahman* and of Tennessee's lethal injection protocol. (*See* Docket No. 16 at 9-15.) At no time, however, do they explain how the plaintiff has failed to state a claim such that their motion to dismiss should be granted under Rule 12(b)(6).

The defendants' motion to dismiss is not an invitation for the court to delve into the merits of the plaintiff's underlying claims.[8] *See Swierkiewicz*, 534 U.S. at 514. Rather, accepting, as it must, the facts as the plaintiff has pleaded them, the court finds that he has presented a viable claim that Tennessee's lethal injection procedure violates his Eighth Amendment and due process rights. (*See, e.g.*, Docket No. 1 ¶ 53 (listing plaintiff's allegations that he would be "inadequately anesthetized under the Tennessee protocol . . . and . . . would experience an excruciatingly painful and horrifying death as a result of the conscious asphyxiation caused by the use of pancuronium bromide and the painful internal burn and

---

[8] Comparatively, motions for a preliminary injunction do require an examination of a claim's merits. *See Alley v. Little*, 181 Fed. App'x 509, 513 (6th Cir.) (finding that "the small likelihood" of a condemned inmate's success on the merits of his challenge to Tennessee's lethal injection protocol "ultimately decides the matter" of whether his execution should be subject to a preliminary injunction).

15

cardiac arrest caused by the introduction of potassium chloride").) As such, the defendants'

motion to dismiss based on the plaintiff's purported failure to state a claim will be denied.

**IV.    The plaintiff has failed to state an equal protection claim.**

The plaintiff alleges that his execution by lethal injection will deny him equal protection

in violation of the Fourteenth Amendment because, while the defendants intend to use

pancuronium bromide as part of the lethal injection protocol, the state has prohibited the use of

this and other neuromuscular blocking agents during the euthanization of non-livestock animals.

(*See* Docket No. 18 at 20.)

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall

"deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend.

XIV, § 1. To establish a claim for relief under the Equal Protection Clause, a plaintiff must

demonstrate that the government treated him disparately as compared to similarly situated

persons and that such disparate treatment either burdens a fundamental right, targets a suspect

class, or has no rational basis. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,

Mich.,* 470 F.3d 286, 298 (6th Cir. 2006).

Here, the plaintiff alleges that the defendants' use of pancuronium bromide will infringe

on his fundamental rights. (*See* Docket No. 18 at 20-21 (alleging that Tennessee's lethal

injection protocol infringes on the fundamental rights of prison inmates).) He fails to

demonstrate, however, that such a use will result in his disparate treatment as compared to other

similarly situated persons. *See Club Italia Soccer & Sports Org., Inc.,* 470 F.3d at 298;

16

*Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006) ("The threshold element of an equal protection claim is disparate treatment . . . ."). Indeed, the plaintiff has not cited—nor has the court's research revealed—a single case in which human beings and animals are defined as "similarly situated."[9] As such, the plaintiff cannot make out an equal protection claim on these grounds, and the defendants' motion to dismiss this claim will be granted.

## CONCLUSION

For the reasons discussed above, the defendants' Motion to Dismiss will denied in part and granted in part.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge

---

[9]A Nevada case addressed similar, although not identical, issues. *See Carter v. Lamb*, 872 F. Supp. 784, 790 (D. Nev. 1995) (denying a plaintiff's claim that defendants violated her equal protection rights in favor of the rights of livestock when they plowed roads to allow cattle ranchers to feed and care for their animals but neglected to plow the road leading to her residence).

17