# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIE MCNAIR, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | Case No. 2:06-cv-695-WKW |
| | ) | |
| RICHARD ALLEN, et al., | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |
| ———————————————— | ) | |
| JAMES CALLAHAN, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | Case No. 2:06-cv-919-WKW |
| | ) | |
| RICHARD ALLEN, et al., | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY DISMISSAL BASED ON THE DOCTRINE OF LACHES

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ ii

SUMMARY OF ARGUMENT .......................................................................1

ARGUMENT ...............................................................................................2

I.  Laches Cannot Be Found on the Face of the Pleadings................................2

II.  Laches Cannot Be Found on a Summary Judgment Basis ..........................4

    A.  Defendants Fail to Make an Affirmative Evidentiary Showing ..................5

    B.  Disputed Issues of Material Fact Preclude a Finding of Laches..................6

        1.  Plaintiffs Did Not Delay in Filing This Action................................6

        2.  Any Supposed Delay on the Part of Plaintiffs Was Excusable......................10

        3.  Defendants Have Not Suffered Prejudice ......................................10

CONCLUSION............................................................................................14

i

# TABLE OF AUTHORITIES

## CASES

Ambrit, Inc. v. Kraft, Inc., 812 F.2d 1531 (11th Cir. 1986) ...........................................1

Arclar Co. v. Gates, 17 F. Supp. 2d 818 (S.D. Ill. 1998) ..............................................3

Bratton v. Bethlehem Steel Corp., 649 F.2d 658 (9th Cir. 1980) ...................................5

Carell v. Shubert Org., Inc., 104 F. Supp. 2d 236 (S.D.N.Y. 2000) ...................2, 3, 10

Clark v. Amoco Prod. Co., 794 F.2d 967 (5th Cir. 1986).............................................3

Commercial Union Ins. Co. v. Sepco Corp., 300 F. Supp. 2d 1198 (N.D. Ala. 2004)..........1, 6, 10

Costello v. United States, 365 U.S. 265 (1961) ...........................................................13

Ecology Ctr. of La., Inc. v. Coleman, 515 F.2d 860 (5th Cir. 1975)..........................1, 5

Grayson v. Allen, No. 2:06-cv-1032-WKW (M.D. Ala. Apr. 26, 2007)........................8

Harbison v. Little, No. 3:06-cv-01206 (M.D. Tenn. Jan. 29, 2007) .............................14

Hawxhurst v. Pettibone Corp., 40 F.3d 175 (7th Cir. 1994).......................................11

Hill v. McDonough, 126 S. Ct. 2096 (U.S. 2006) .................................................12, 13

Howard v. Roadway Express, Inc., 726 F.2d 1529 (11th Cir. 1984)..............................8

In re Winters, No. 93-7381, 1995 WL 453053 (N.D. Ill. July 28, 1995) ................10, 11

J.S. v. Campbell, No. 2:05-cv-928-WKW, 2006 WL 2864254 (M.D. Ala. Oct. 5, 2006)..........4, 5

Jones v. Allen, No. 2:06cv986-MHT, 2007 WL 1140416 (M.D. Ala. Apr. 17, 2007) .........7, 8, 13

Kourtis v. Cameron, 419 F.3d 989 (9th Cir. 2005)...................................................2, 5

Macon County Invs., Inc. v. Warren, No. 3:06-CV-224-WKW, 2007 WL 141959 (M.D. Ala. Jan. 17, 2007) .......................................................................................2

Murray v. Sevier, 993 F. Supp. 1394 (M.D. Ala. 1997)...............................................1

Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).....................................12

Nelson v. Campbell, 541 U.S. 637 (2004) ...............................................................12, 13

Nooner v. Norris, No. 5:06CV00110 SWW (E.D. Ark. June 19, 2006) ...................................3, 13

Patton v. Jones, No. CIV-06-0591-F, 2006 WL 2246441 (W.D. Okla. Aug. 4, 2006) ...................3

Superior Paintless Dent Removal, Inc. v. Superior Dent Removal, Inc., 454 F. Supp. 2d
    769 (N.D. Ill. 2006) ...............................................................................................3

Top Notch Consulting, Inc. v. Universal City, LLC, No. 2:05-cv-996-WKW, 2007 WL
    841663 (M.D. Ala. Mar. 19, 2007) ......................................................................4, 5

United States v. Weintraub, 613 F.2d 612 (6th Cir. 1979) ...........................................9

Walden v. City of Chicago, 391 F. Supp. 2d 660 (N.D. Ill. 2005) ...................................2

## STATUTES AND RULES

42 U.S.C. § 1983 ................................................................................................ passim

Federal Rule of Civil Procedure 56 ...............................................................................4

Plaintiffs Willie McNair and James Callahan ("Plaintiffs") submit the following Memorandum of Law in Opposition to Defendants' Motion for Summary Dismissal Based on the Doctrine of Laches, filed on April 24, 2007 (the "Motion"). The Motion, generically framed as one for "summary dismissal," entirely fails to identify the statute or rule pursuant to which it is brought. For that reason alone, it must be dismissed. Moreover, even were the Court to deem the filing to be a motion to dismiss on the pleadings or a motion for summary judgment, the Motion should be denied because it does not present a case for dismissal under either procedural mechanism for the reasons set forth below.

## SUMMARY OF ARGUMENT

"To establish laches, a defendant must demonstrate 1) a delay in asserting a right or a claim, 2) that the delay was not excusable, and 3) that there was undue prejudice to the party against whom the claim is asserted." Ambrit, Inc. v. Kraft, Inc., 812 F.2d 1531, 1545 (11th Cir. 1986). See also Ecology Ctr. of La., Inc. v. Coleman, 515 F.2d 860, 867 (5th Cir. 1975) ("There are three independent criteria which must be met before the equitable doctrine of laches can be applied. The defendant must show a delay in asserting a right or claim, that the delay was not excusable and that there was undue prejudice to the party against whom the claim is asserted."); Commercial Union Ins. Co. v. Sepco Corp., 300 F. Supp. 2d 1198, 1207 (N.D. Ala. 2004) ("Laches only applies if the alleged delay in asserting a claim is both (i) inexcusable and (ii) has resulted in undue prejudice to the opposing party. An inexcusable delay is required."). Defendants utterly fail to satisfy even one of these requirements.

Moreover, laches "'is committed to the sound discretion of the district court.'" Commercial Union, 300 F. Supp. 2d at 1208 ("the defense of laches 'is committed to the sound discretion of the district court.'") (citation omitted); see also Murray v. Sevier, 993 F. Supp.

1394, 1404 (M.D. Ala. 1997) ("'Laches is an equitable doctrine committed to the sound discretion of the trial court.'") (citation omitted).  Given the grave importance of the issues presented in this case, as well as the factual background, this Court should in any event exercise its discretion to deny this Motion, regardless of how it is characterized.

## ARGUMENT

### I.    <u>Laches Cannot Be Found on the Face of the Pleadings</u>

In order for a defense of laches to prevail on a motion to dismiss, laches must be apparent from the face of the pleadings.  <u>See, e.g.</u>, <u>Carell</u> v. <u>Shubert Org., Inc.</u>, 104 F. Supp. 2d 236, 263 (S.D.N.Y. 2000) ("The defense of laches is not appropriately raised in a motion to dismiss, unless 'it is clear on the face of the complaint and plaintiff can prove no set of facts to avoid the insuperable bar.'"); <u>Kourtis</u> v. <u>Cameron</u>, 419 F.3d 989, 1000 (9th Cir. 2005) ("At the motion-to-dismiss phase, the obstacle to asserting a successful laches defense is even greater [than it is at the summary judgment phase] because the defendant must rely exclusively upon the factual allegations set forth in the complaint.").  At the same time, courts "must accept all factual allegations as true and view them in a light most favorable to the plaintiff.  The threshold is 'exceedingly low' for a complaint to survive a motion to dismiss for failure to state a claim."  <u>Macon County Invs., Inc.</u> v. <u>Warren</u>, No. 3:06-CV-224-WKW, 2007 WL 141959, at *2 (M.D. Ala. Jan. 17, 2007) (Watkins, J.) (citations omitted).  Thus, "the nature of the inquiry needed to fully and fairly evaluate any laches claim 'is such that most courts have found the defense of laches to present questions of fact unsuitable for resolution at the pleading stage.'"  <u>Walden</u> v. <u>City of Chicago</u>, 391 F. Supp. 2d 660, 681 (N.D. Ill. 2005).

In the Motion, Defendants have failed to identify any pleadings that support their defense of laches.  Indeed, they do not include even a single cite to the complaints in this action from which their claimed entitlement to a laches "summary dismissal" must be devined.  Thus, to the

extent Defendants seek dismissal based on the pleadings, the Motion must be denied.  See, e.g.,

Arclar Co. v. Gates, 17 F. Supp. 2d 818, 823 (S.D. Ill. 1998) ("The defense of laches can be

raised by a motion to dismiss if:  (1) an unreasonable delay appears on the face of the pleading;

(2) no sufficient excuse for delay appears or is pleaded; and (3) the motion specifically points out

the defect.") (emphasis added).  See also Carell, 104 F. Supp. 2d at 263 (finding that a claim was

not barred by laches in part because the defendants "point[ed] to no specific facts in the

Complaint that would support" a finding of prejudice and "'the factual allegations in the

pleadings [did] not afford the Court sufficient basis for weighing the reasons for [plaintiff's]

delay against the prejudice to [defendants] caused by that delay'"); Clark v. Amoco Prod. Co.,

794 F.2d 967, 974 (5th Cir. 1986) (reversing the district court's dismissal of a claim based on the

defense of laches where the pleadings did not on their face establish the defense); Superior

Paintless Dent Removal, Inc. v. Superior Dent Removal, Inc., 454 F. Supp. 2d 769, 771 (N.D. Ill.

2006) (denying a motion to dismiss based on laches where the elements of laches were not

clearly present on the face of the complaint).

Defendants have cited no cases in which laches were found to bar a § 1983 method-of-

lethal-injection claim.  Plaintiffs have been able to locate only two cases in which laches even

were addressed in the § 1983 method-of-lethal-injection context, and in both of those cases a

laches defense was rejected.  See Patton v. Jones, No. CIV-06-0591-F, 2006 WL 2246441 (W.D.

Okla. Aug. 4, 2006) ("The laches defense raises fact questions regarding the existence of any

delays, the reasons for any such delays, the prejudice created by any delays, and the balance of

equities.  These issues cannot be determined on a motion to dismiss.  Accordingly, defendants'

motion to dismiss this action based on laches should be denied."); Nooner v. Norris, No.

5:06CV00110 SWW at 7 (E.D. Ark. June 19, 2006) ("In this case, the allegations in the

complaint do not confirm the existence of an unreasonable, inexcusable delay on the part of

Nooner or Davis in commencing suit, or resulting prejudice to Defendants.  Furthermore,

Defendants provide no additional evidence to support their defense.  The Court has no means, at

this time, to determine whether Plaintiffs' claims are barred by laches.") (attached hereto as

Exhibit 1).

## II.    Laches Cannot Be Found on a Summary Judgment Basis

If the Court chooses to characterize the Motion as one for summary judgment, it also

must be denied for several reasons.  Defendants have failed to meet even the most basic

requirements for making a motion for summary judgment, and if this is such a motion, it is

utterly meritless.

"Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is

appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law.'"  Top Notch Consulting, Inc.

v. Universal City, LLC, No. 2:05-cv-996-WKW, 2007 WL 841663, at *3 (M.D. Ala. Mar. 19,

2007) (Watkins, J.) (citations omitted); J.S. v. Campbell, No. 2:05-cv-928-WKW, 2006 WL

2864254, at *2 (M.D. Ala. Oct. 5, 2006) (Watkins, J.) (same).  Courts must construe evidence in

the non-movant's favor.  See, e.g., Top Notch, 2007 WL 841663, at *4 ("[A] court ruling on a

motion for summary judgment must believe the evidence of the non-movant and must draw all

justifiable inferences from the evidence in the non-moving party's favor.") (citation omitted);

J.S., 2006 WL 2864254, at *2 (same).  Any Rule 56 motion must therefore be supported by an

evidentiary showing.  Defendants have made no such showing.

Moreover, in light of the fact-specific nature of defenses based on laches, courts have

recognized that such defenses can rarely be resolved even on motions for summary judgment

where the party making the motion actually abides by the rules.  See, e.g., Ecology Ctr. of La., Inc. v. Coleman, 515 F.2d 860, 868 n.8 (5th Cir. 1975) ("This Court has especially noted that caution is called for before laches is applied on summary judgment where the facts have only been developed in affidavits and allegations."); Kourtis v. Cameron, 419 F.3d 989, 1000 (9th Cir. 2005) ("'[A] claim of laches depends on a close evaluation of all the particular facts in a case,' and it therefore 'is seldom susceptible of resolution by summary judgment.'") (citation omitted); Bratton v. Bethlehem Steel Corp., 649 F.2d 658, 666-67 (9th Cir. 1980) ("Laches questions are seldom susceptible of resolution by summary judgment, because 'where laches is raised as a defense "the factual issues involved . . . can rarely be resolved without some preliminary evidentiary inquiry."'").  The same is true here.

### A.      Defendants Fail to Make an Affirmative Evidentiary Showing

It is well-established that in order to succeed on a motion for summary judgment, the movant must first make an affirmative evidentiary showing.  See, e.g., Top Notch Consulting, Inc. v. Universal City, LLC, No. 2:05-cv-996-WKW, 2007 WL 841663, at *3 (M.D. Ala. Mar. 19, 2007) (Watkins, J.) ("The party asking for summary judgment 'always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.'") (citation omitted); J.S. v. Campbell, No. 2:05-cv-928-WKW, 2006 WL 2864254, at *2 (M.D. Ala. Oct. 5, 2006) (Watkins, J.) (same).  Defendants have not made any evidentiary showing.  Again, for this reason alone, the Motion must be denied.

In lieu of proffering evidence (for example, by affidavit) in support of their claim of laches, Defendants rely on unsworn, non-evidentiary, conclusory allegations.  For example, they claim that the first two requirements for laches are met because "Plaintiffs knew or should have

5

known of [their] claim in 2002 when [their] sentence changed to lethal injection by operation of law. . . .  The plaintiffs could have asserted their claims much earlier and there is no excuse for their having failed to do so."  (Mot. at 2.)  They further claim that the third requirement – undue prejudice – is met because Plaintiffs' action somehow interferes with the timely enforcement of Plaintiffs' sentences (Mot. at 2-3), an unlikely proposition to say the least, given the fact that Defendants have felt fine setting execution dates in other § 1983 actions in this Court.

The statements of counsel are not evidence, and Defendants fail to cite any evidence in support of their claims (which happen to be false).  See, e.g., Commercial Union Ins. Co. v. Sepco Corp., 300 F. Supp. 2d 1198, 1208 (N.D. Ala. 2004) (rejecting a claim of prejudice resulting from delay where the defendant "brought no evidence before the court" and instead argued via an unsupported statement in a memorandum of law that witnesses had been lost). Thus, the Motion should be dismissed on this ground as well.

### B. Disputed Issues of Material Fact Preclude a Finding of Laches

The Motion should also be denied because even if Defendants were to make an evidentiary showing, at the very least there would be disputed issues of material fact (if not outright findings directly contrary to Defendants' assertions).

### 1. Plaintiffs Did Not Delay in Filing This Action

With respect to the first requirement for a finding of laches, Plaintiffs have not "delayed" in bringing the present action.  First, Defendants' suggestion that Plaintiffs could have filed suit in 2002 is simply incorrect.  Plaintiffs did not then have the procedural ability to raise that issue in the federal courts because of procedural and substantive rules dealing with habeas petitions and the lack of a § 1983 method-of-execution remedy in the Eleventh Circuit prior to 2006.  At that point, Plaintiffs had already filed habeas petitions, and any attempt to amend their petitions to include challenges to the method of lethal injection would have resulted in the grave risk of

having such petitions dismissed on the grounds that Plaintiffs had not exhausted state post-conviction remedies as to lethal injection.  Nor could they have brought a § 1983 action because it was not until 2006, when the Supreme Court required the Eleventh Circuit to permit method-of-execution challenges brought under § 1983 (see Hill v. McDonough, 126 S. Ct. 2096, 2104 (U.S. 2006)) that such a remedy realistically became available to these Plaintiffs.

Second, evolving standards of decency had not progressed to a point in 2002 such that a challenge to the method of lethal injection employed in Alabama would have had a reasonable chance of success at that time.  It is only within the past year that support for lethal injection has begun to crumble, such that, to the best of Plaintiffs' knowledge, lethal injections are now on hold in eight states, possibly more.

Third, the unfixed nature of Alabama's lethal injection protocol ("Execution Procedures") demonstrates that filing at a "much earlier" point (Mot. at 2), even if possible, would have been premature.  Although in other litigation in this Court before Judge Thompson Defendants claimed that the latest changes made to the Execution Procedures were minimal, they have admitted that other changes were previously made, although they are unable to reveal what the changes were, when they took place, or copies of them.  See Jones v. Allen, No. 2:06cv986-MHT, 2007 WL 1140416, at *11 n.2 (M.D. Ala. Apr. 17, 2007) ("The defendants have disclosed the most recent revision to the execution protocol, which does not contain any changes that materially affect Jones's claim.  However, the defendants have also admitted that earlier revisions to the protocol were made as well but that after diligent search they are unable to locate the version of the protocol that existed before such changes were made.").  The fact is that Defendants can change the Execution Procedures at any time in their entire discretion.  They can even change the drugs used because the lethal injection legislation does not require any specific

drug.  And certainly the actual steps taken by those carrying out the execution – vital information

as shown by other cases and the discovery in <u>Jones</u>[1] – can change at any time.  Thus, if Plaintiffs

had filed challenges to the Execution Procedures at a "much earlier" point, they may have been

required to amend or re-file their claims as changes to the Execution Procedures were made,

resulting in a waste of time and resources of the parties and this Court.  Furthermore, Defendants

may still make further changes to the Execution Procedures before Plaintiffs' as-yet-unscheduled

executions take place.  Defendants may in fact be required to do so shortly, depending on the

outcome of the trial in <u>Grayson</u> v. <u>Allen</u>, No. 2:06-cv-1032-WKW (M.D. Ala. filed Nov. 17,

2006) (another method-of-lethal-injection § 1983 action), which the Court currently intends to

commence on June 26, 2007.  <u>Grayson</u>, No. 2:06-cv-1032-WKW (M.D. Ala. Apr. 26, 2007)

(attached hereto as Exhibit 2).

     In light of the fact that Plaintiffs did not know whether the current Execution Procedures

would be the ones used to execute them, or how the procedures actually will be implemented, it

can hardly be said that they have "delayed" in filing their challenges to the Execution Procedures

when they did.  Defendants' suggestion that Plaintiffs could have or should have filed challenges

as early as 2002 to the Execution Procedures that would be in place five years later – even if,

contrary to the fact, Plaintiffs could have done so – simply makes no sense.

     Fourth, Plaintiffs were not required to file their § 1983 claims prior to the expiration of

their habeas appeals in light of the fact that their appeals, if successful, would have removed the

need to file a method-of-execution claim.  <u>Cf.</u> <u>Howard</u> v. <u>Roadway Express, Inc.</u>, 726 F.2d 1529,

1532-33 (11th Cir. 1984) (finding no inexcusable delay where the plaintiff had waited until

completion of the EEOC administrative process before filing a Title VII claim, noting that "[a]

---

[1] Discovery in <u>Jones</u> shows a gulf between what seems to happen, simply from reading the Execution Procedures, and what actually happens in real-life executions in Alabama.

plaintiff may not be faulted for relying on the administrative process prior to the issuance of a no-reasonable-cause determination, for there remains the potential that the EEOC investigation will result in conciliation or prosecution on the EEOC's part."); United States v. Weintraub, 613 F.2d 612, 619 (6th Cir. 1979) ("[I]t cannot be said that there was a lack of diligence by the IRS sufficient for a laches defense inasmuch as the IRS was attempting between 1963 and 1976 to collect from Andrews the taxes he owed, upon which appellant's liability was predicated. Indeed, it was completely reasonable for the IRS to proceed initially against Andrews since collection from him could have obviated this proceeding."). Plaintiff McNair filed the present § 1983 action on August 7, 2006, less than four months after the conclusion of his habeas appeals. See McNair v. Allen, No. 2:06-cv-695-WKW (M.D. Ala. filed Aug. 7, 2006); McNair v. Allen, 126 S. Ct. 1828 (U.S. 2006) (denying certiorari on Mr. McNair's habeas claims on April 17, 2006). Plaintiff Callahan filed on October 11, 2006, just one day after his habeas appeals concluded. See Callahan v. Allen, No, 2:06-cv-919-WKW (M.D. Ala. filed Oct. 11, 2006); Callahan v. Allen, 127 S. Ct. 427 (U.S. 2006) (denying certiorari on Mr. Callahan's habeas claims on October 10, 2006).

Notably, Defendants apparently shared Plaintiffs' belief that they were not required to file their § 1983 claims until after the conclusion of their habeas appeals, as Defendants raised no challenges to the timeliness of Mr. McNair's action during the first seven months of its pendency, or to the timeliness of Mr. Callahan's action during the first four and a half months of its pendency (other than to raise laches and statutes of limitations as one of many affirmative defenses in their answers). Instead, prior to filing a motion for judgment on the pleadings or for summary judgment on statute of limitations grounds on March 14, 2007 and the present motion on April 24, 2007, Defendants gave every indication that they believed that the present § 1983

claims were timely filed.  Among other things, (i) they negotiated a proposed discovery schedule and agreed to a proposed trial date, which was subsequently continued (without objection) from June 25, 2007 to October 2, 2007, <u>McNair</u> v. <u>Allen</u>, No. 2:06-cv-695-WKW (M.D. Ala. Mar. 8, 2007); <u>Callahan</u> v. <u>Allen</u>, No, 2:06-cv-919-WKW (M.D. Ala. Mar. 8, 2007); (ii) they appeared at a status conference before this Court on November 28, 2006 at which Defendants' counsel did not argue that statutes of limitations or laches warranted dismissal of this action (Nov. 28, 2006 Tr.); and (iii) Defendants began to engage in discovery.

In light of the foregoing, at the very least, there is a disputed issue of fact as to whether there was any "delay."

### 2.    Any Supposed Delay on the Part of Plaintiffs Was Excusable

With respect to the second requirement, even if Plaintiffs could somehow be found to have "delayed" in filing their claims, that was excusable.  As set forth above, Plaintiffs believed that there would be little point in filing a § 1983 claim challenging the method of execution, nor would it be ripe, before they had exhausted their habeas appeals, which might have resulted in their death sentences being overturned.  Thus there is a disputed issue of material fact with respect to this requirement as well.

### 3.    Defendants Have Not Suffered Prejudice

With respect to the third requirement, Defendants have failed to identify any material prejudice they have suffered.  <u>See</u> <u>Commercial Union Ins. Co.</u> v. <u>Sepco Corp.</u>, 300 F. Supp. 2d 1198, 1208 (N.D. Ala. 2004) ("Material prejudice resulting from the delay is essential.") (citation omitted).  Courts have found that "prejudice is present when a 'defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed.'"  <u>Carell</u> v. <u>Shubert Org., Inc.</u>, 104 F. Supp. 2d 236, 263 (S.D.N.Y. 2000) (citation omitted); <u>see also</u> <u>In re Winters</u>, No. 93-7381, 1995 WL 453053, at *7 (N.D. Ill. July 28, 1995) ("Before allowing laches

as a defense, a court must be convinced that the moving party reasonably relied on the opponent's failure to file suit, and that based on the assumption that the opponent would not sue, the moving party altered his or her position in a detrimental manner; more than mere inconvenience to the defendant is required.") (citation omitted).

Defendants merely claim that Plaintiffs' filing of this action has interfered with their ability to enforce Plaintiffs' sentences in a timely manner, apparently because they cannot seek an execution date without fear that Plaintiffs will seek a stay of execution. (Mot. at 4.) Defendants have provided no evidence indicating that they would have sought an execution date at an earlier point if Plaintiffs had filed suit earlier, and their purported concern regarding the expense of litigating stay issues seems to undermine this point. (Of course Defendants could mitigate such expense simply by defending the constitutionality of the Execution Procedures once and for all, which presumably will take place in this Court in June. Instead, in case after case, they seek to prevent such review by mooting the issue by executing the inmate bringing the challenge, avoiding scrutiny by whatever procedural artifice they can come up with. Why not just have the matter heard and be over it?)

Thus, Defendants' claim of prejudice is just speculation, which cannot provide the basis for a finding of prejudice. See, e.g., In re Winters, 1995 WL 453053, at *7 (finding an allegation of prejudice to be speculative at best where "Midwest assert[ed] that it was prejudiced by Chrysler's 14-month delay in filing its action to contest the tax deed proceedings" because "had Chrysler filed its action shortly after being served with notice from Midwest, it would still have had time to file a motion requesting leave from the stay in the event of an adverse ruling by the bankruptcy court"); see also Hawxhurst v. Pettibone Corp., 40 F.3d 175, 181-82 (7th Cir. 1994) (affirming a finding that a claim was not barred by laches on the grounds that prejudice had not

been shown where "Pettibone knew that it would have to defend Hawxhurst's claim from October 28, 1983, the date of its filing, until the bar date of October 31, 1986. The bankruptcy court correctly held that Hawxhurst is not responsible for any failure by Pettibone to prepare a defense during this period.").

Defendants attempt to muddy the waters by misguidedly importing the rationales of Hill v. McDonough, 126 S. Ct. 2096 (U.S. 2006) and Nelson v. Campbell, 541 U.S. 637 (2004) into their laches defense, asserting that Plaintiffs' filing of this action is inconsistent with the "important interest in the timely enforcement of a sentence." (Mot. at 2-3.) To the contrary, in both cases, the Supreme Court recognized that timely enforcement of sentences was a factor to consider in deciding whether to grant a stay of execution. See Hill, 126 S. Ct. at 2104 ("Filing an action that can proceed under § 1983 does not entitle the complainant to an order staying an execution as a matter of course. Both the State and the victims of crime have an important interest in the timely enforcement of a sentence."); Nelson, 541 U.S. at 649-50 ("A stay is an equitable remedy, and '[e]quity must take into consideration the State's strong interest in proceeding with its judgment and . . . attempt[s] at manipulation.' . . . Given the State's significant interest in enforcing its criminal judgments, there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.") (citations omitted).

Thus those decisions clearly dealt with the equitable principles affecting requests for a stay of execution. At no point did Hill or Nelson imply that a generalized interest in enforcing a sentence could substitute for a showing of prejudice in a motion based on an affirmative defense of laches to an entire action. In fact, the Supreme Court itself has recognized that prejudice is a predicate for a finding of laches. See, e.g., Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101,

121-22 (2002) (The defense of laches "''requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense."''") (citations omitted); Costello v. United States, 365 U.S. 265, 282 (1961) ("Laches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.").  Nor have Defendants provided any support for their suggestion that the public interest in seeing Plaintiffs held accountable for their crimes (Mot. at 3) can substitute for a finding of prejudice.  The present action is not a challenge to Plaintiffs' death sentences themselves.  It is instead a challenge to the method of execution, and Defendants certainly cannot (and should not) claim a public interest in executing Plaintiffs in an unconstitutional manner.  In fact, Defendants' cries of "delay" and "prejudice" ring particularly hollow where the method of execution has been so widely questioned by courts, state governments and scientific studies, but Defendants obstinately refuse to change it, though they readily could do so.

No execution dates have been sought in the present matter, and thus no stays have been sought.  Hill and Nelson simply have no pertinence here.  Defendants' purported fear that Plaintiffs will seek a stay if the State sets execution dates simply cannot constitute prejudice in the present action.  While Alabama may have "a strong interest in proceeding with the judgment that Callahan and McNair be executed for the capital murders for which they were convicted" (Mot. at 2), they have identified no interference with such proceeding.  Thus, Defendants have failed to demonstrate the lack of a disputed issue of material fact with respect to this requirement as well.[2]

---

[2] Defendants make a passing reference to statutes of limitations at the end of the Motion.  This action is not barred by statutes of limitations, as another judge in this District already held.  See Jones v. Allen, No. 2:06cv986-MHT, 2007 WL 1140416, at *3-8 (M.D. Ala. Apr. 17, 2007) (denying a virtually identical motion for judgment on the pleadings or for summary judgment based on statute of limitations grounds filed by the same Defendants); see also

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court (i) deny

Defendants' Motion, and (ii) grant such further other relief as the Court deems warranted.


Date:  May 1, 2007


     /s Vincent R. FitzPatrick, Jr.

VINCENT R. FITZPATRICK, JR.
HEATHER K. MCDEVITT
STEPHANIE COHEN
Bar Numbers (SDNY):
VF2907; HM9973; SM7006
Counsel for Plaintiff

White & Case LLP
1155 Avenue of the Americas
New York, NY  10036
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
vfitzpatrick@whitecase.com
hmcdevitt@whitecase.com
stephcohen@whitecase.com

     - and -

     /s Randall S. Susskind

RANDALL S. SUSSKIND (SUS002)
CATHLEEN I. PRICE (PRI056)

---

<u>Nooner</u> v. <u>Norris</u>, No. 5:06CV00110 SWW at 7-8 (E.D. Ark. June 19, 2006) (rejecting a statute of limitations defense to a § 1983 method-of-lethal-injection claim) (attached hereto as Exhibit 1); <u>Harbison</u> v. <u>Little</u>, No. 3:06-cv-01206 at 8-11 (M.D. Tenn. Jan. 29, 2007) (same) (attached as Exhibit 3 hereto).

Counsel for Plaintiff Willie McNair

Equal Justice Initiative of Alabama
122 Commerce Street
Montgomery, AL  36104
Telephone: (334) 269-1803
Facsimile: (334) 269-1806
rsusskind@eji.org
cprice@eji.org

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 1, 2007, a copy of the foregoing was filed electronically with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to the

following:  J. Clayton Crenshaw and James W. Davis.


_____/s Heather K. McDevitt_____
HEATHER K. MCDEVITT
Bar Number (SDNY): HM9973
Counsel for Plaintiff

White & Case LLP
1155 Avenue of the Americas
New York, NY  10036
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
hmcdevitt@whitecase.com

# <u>Exhibit 1</u>

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

TERRICK TERRELL NOONER                                              PLAINTIFF

No. 5:06CV00110 SWW

LARRY NORRIS, Director,
Arkansas Department of Correction;
GAYLON LAY, Warden,
Arkansas Department of Correction;
WENDY KELLY, Deputy Director for
Health and Correctional Programs;
JOHN BYUS; Administrator, Correctional
Medical Services, Arkansas Department of Correction; and
OTHER UNKNOWN EMPLOYEES,
Arkansas Department of Correction                                   DEFENDANTS

**ORDER**

Terrick Terrell Nooner ("Nooner"), a death row inmate, commenced this action pursuant

to 42 U.S.C. § 1983, claiming that the chemical protocol and procedures used for carrying out

execution by lethal injection in Arkansas amount to cruel and unusual punishment and an

arbitrary, capricious, and irrational method of execution that violates the Fifth, Eighth, and

Fourteenth Amendments of the United States Constitution.  Nooner seeks a declaration that the

State's lethal injection procedure is unconstitutional an injunction enjoining Defendants from

carrying out the procedure in the future.  On May 4, 2006, Arkansas death row inmate Don

William Davis ("Davis"), who is scheduled to be executed on July 5, 2006,[1] filed a motion to

intervene.  The Court permitted  Davis  to intervene as a party-plaintiff pursuant to Fed. R. Civ.

P. 24(b)(2), with the understanding that he asserts the same claims and seeks the same relief as

_____

[1]Nooner's execution date has not been set.

set forth in the complaint. Before the Court is Defendants' motion to dismiss for failure to state a claim for which relief can be granted (docket entry #13) and Plaintiffs' responses in objection (docket entries #20, #23). After careful consideration, and for the reasons that follow, the motion will be denied.

I.

In deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, all facts alleged in the complaint are assumed to be true. *Doe v. Northwest Bank Minn., N.A.*, 107 F.3d 1297, 1303-04 (8th Cir. 1997). The complaint must be reviewed in the light most favorable to the plaintiff, *McMorrow v. Little*, 109 F.3d 432, 434 (8th Cir. 1997), and should not be dismissed unless it is clear beyond doubt that the plaintiff can prove no set of facts thereunder which would entitle him or her to relief. *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996). The Court may grant a motion to dismiss on the basis of a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

A motion to dismiss is not a device for testing the truth of what is asserted or for determining whether the plaintiff has any evidence to back up what is in the complaint. *ACLU Foundation v. Barr*, 952 F.2d 457, 467 (D.C. Cir. 1991). The issue is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims. *Id.* Thus, a motion to dismiss should be granted "as a practical matter . . . only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

II.

Arkansas' lethal injection statute provides:

> The punishment of death is to be administered by a continuous intravenous injection
> of a lethal quantity of an ultra-short-acting barbiturate in combination with a
> chemical paralytic agent until the defendant's death is pronounced according to
> accepted standards of medical practice.

Ark. Code Ann. 5-4-717(a)(1). The statute gives the Director of the Arkansas Department of

Correction ("ADC") the responsibility to determine the substances to be uniformly administered

and the procedures to be used in any execution. *See* Ark. Code Ann. § 5-4-617(a)(2).

According to allegations in the complaint, executions by lethal injection in Arkansas are

carried out as follows. First, the condemned prisoner is placed on a gurney in the execution

chamber, and his head and appendages are immobilized. Next, ADC employees insert IV lines

into the prisoner and attach an electrocardiogram monitor. Two lay-executioners begin

"attaching and plunging" up to eight syringes in a complicated sequence prescribed by ADC

protocol. First one drug, then a saline flush, then two syringes of the next drug, another saline

flush, and then up to three syringes of a third drug. The drugs administered are: Thiopental,

administered to cause unconsciousness; Pancuronium bromide, administered to cause paralysis

and stop all movement including respiration; and Potassium chloride, to stop the heart. When

the prisoner exhibits no sign of life, the warden summons the coroner to pronounce death.

Potassium chloride burns intensely as it travels through the veins to the heart. Plaintiffs

claim, for reasons set forth in the complaint, the foregoing procedure creates a risk of gratuitous

infliction of unnecessary pain. According to Plaintiffs, it is possible to conduct execution by

lethal injection in a humane manner that complies with Arkansas' lethal injection statute.

III.

In support of their motion to dismiss, Defendants assert that Plaintiff Nooner[2] has failed

---

[2]Defendants filed their motion to dismiss before Plaintiff Davis intervened in this case.
Defendants have not amended their motion to make specific allegations with respect to Davis's

to exhaust his administrative remedies, his complaint must be dismissed as a unauthorized, successive petition for habeas corpus, and his claims are barred under the applicable statute of limitations and pursuant to the equitable laches doctrine. The Court will consider each argument.

Exhaustion

The Prison Litigation Reform Act ("PLRA") provides that, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement applies to all suits about prison life,[3] and it requires prisoners to exhaust administrative processes before commencing suit in federal court. *See Porter v. Nussle*, 122 S. Ct. 983, 988, 992 (2002).

Defendants assert that Nooner is required to "provide proof that he exhausted all administrative remedies before he can bring a § 1983 action." The Court disagrees. The PLRA's exhaustion requirement is not a heightened pleading requirement–a prisoner's failure to exhaust is an affirmative defense that the defendant has the burden to plead and to prove. *See Nerness v. Johnson,* 401 F.3d 874, 876 (8th Cir. 2005)(citing *Foulk v.harrier,* 262 F.3d 687, 697 (8th Cir. 2001)).

Administrative exhaustion is required even where a prison grievance process will not provide the type of relief sought by a prisoner. *See Booth v. Churner*, 121 S. Ct. 1818, (2001).

---

claims.

[3]The Court assumes, without deciding, that Nooner's constitutional challenge to Arkansas' chosen process for carrying out his death sentence as an "inmate suit about prison life."

However, a prisoner need only exhaust "such administrative remedies as are available" and exhaustion is not required when grievance officers have no authority to act on the subject of the complaint. *See id.* at 1823 n.4("Without the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust."). Arkansas law gives the Director of the ADC sole responsibility and authority for determining the substances to be administered and the procedures to be used in any execution. *See* Ark. Code Ann. § 5-4-617(a)(2).

Nooner asserts that the ADC's inmate grievance process offers no available remedy because the grievance tribunal, which does not include the Director of the ADC, has no authority to take action with regard to his complaint. Nooner states that before he commenced this lawsuit his attorney wrote Larry Norris, Director of the ADC, and advised him of the claims presented in this lawsuit. Nooner states that, on behalf of Director Norris, the Arkansas Attorney General responded as follows: "While Mr. Norris is aware that several states' protocol has been, and some currently are, the subject of litigation, he believes the protocol used currently insures the necessary anesthetization for the duration of the execution procedure and satisfies Constitutional requirements." Docket entry #20(citing May 25, 2006 letter from Joseph Svoboda). Based on the evidence presently before the Court, the Court finds that Defendants have failed to show that Nooner has failed to exhaust his available administrative remedies.

    Habeas Corpus

On June 12, 2006, the Supreme Court issued a unanimous decision in *Hill v. McDonough*, 2006 WL 1584710 (U.S. June 12, 2006) ruling that a Florida death row inmate, Clarence Hill, may use 42 U.S.C. § 1983 as a vehicle to challenge the constitutionality of Florida's lethal injection protocol, which is similar to the three-drug injection protocol

challenged in this lawsuit. Like Plaintiffs, Hill seeks to enjoin the State from executing him

according to the three-drug protocol, and he claims that the Florida Department of Corrections

could choose other means of lethal injection that would meet constitutional standards.

The Supreme Court reversed the Eleventh Circuit's determination that Hill's civil rights

challenge to Florida's lethal injection protocol is the functional equivalent of an unauthorized,

successive habeas petition. The Court noted that *if* the relief sought would foreclose Hill's

execution, it might be proper to recharacterize his complaint as an action for habeas corpus. *Id.*

at *7. However, like Arkansas' lethal injection statute, Florida law prescribes lethal injection as

the State's method of execution, but it does not specify a specific protocol for lethal injection

and leaves those details to the Florida Department of Corrections. *See* Fla. Stat. §

922.105(1)(stating that a death sentence "shall be executed under the direction of the Secretary

of Corrections or the secretary's designee"). Because Florida law does not specify a particular

lethal injection protocol, the Supreme Court concluded that Hill's lawsuit left the State free to

use an alternative lethal injection procedure. Thus, granting Hill injunctive relief could not be

seen as barring execution of his sentence. *Hill*, 2006 WL 1584710 at *5. The same is true in this

case, and

§ 1983 is a proper vehicle for Plaintiffs' claims.

Laches

Dismissal of a claim on the ground of laches, an affirmative defense, requires a showing

of unreasonable and unjustified delay in bringing a claim, and material prejudice to the

defendant as a result of the delay. *See Advanced Cardiovascular Systems, Inc. v. Scimed Life

Systems*, Inc. 988 F.2d 1157, 1161 (8th Cir. 1993). Defendants assert the defense in the context

of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) confines a

court's inquiry to allegations set forth in the complaint, unless matters outside the pleadings are

presented to and not excluded by the court, in which case the motion is treated as one for

summary judgment. *See id.* ("The strictures of Rule 12(b)(6), wherein dismissal of the claim is

based solely on the complainant's pleading, are not readily applicable to a determination of

laches."). In this case, the allegations in the complaint do not confirm the existence of an

unreasonable, inexcusable delay on the part of Nooner or Davis in commencing suit, or resulting

prejudice to Defendants. Furthermore, Defendants provide no additional evidence to support

their defense. The Court has no means, at this time, to determine whether Plaintiffs' claims are

barred by laches.

### Statute of Limitations

The statute of limitations for § 1983 actions is the forum state's statute of limitations for

personal injury actions, which in Arkansas is three years. *See Morton v. City of Little Rock*, 934

F.2d 180, 182 (8th Cir. 1991). Although state law determines the limitations period for filing

§ 1983 claims, federal law determines when a cause of action accrues. *See White v. Garrison*, 70

F.3d 1276 (8th Cir. 1995) (unpublished table opinion). Under federal common law, a cause of

action accrues when a plaintiff "discovers, or with due diligence should have discovered, the

injury that is the basis of the litigation." *Union Pacific R. Co. v. Beckham*, 138 F.3d 325, 330

(8th Cir. 1998).

Defendants propose that Nooner's cause of action accrued on the date his death sentence

was imposed. Defendants state that Nooner was sentenced in 1996, but Nooner alleges, in the

7

complaint, that his sentence was imposed in 1993.   Regardless of the actual sentencing date, the

Court finds that the date Nooner was sentenced does not necessarily mark the date he discovered

or should have discovered the State's specific lethal injection protocol and whether it carries a

risk of unnecessary pain.  The complaint does not show, on its face, when Plaintiffs' cause of

action accrued or whether their claims are time-barred under the applicable statute of limitations.

Accordingly, dismissal on such grounds is not possible.

　　　For the reasons stated, Defendants motion to dismiss (docket entry #13) is DENIED.

　　　IT IS SO ORDERED THIS 19TH DAY OF JUNE, 2006.


　　　　　　　　　　　　　/s/Susan Webber Wright
　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

8

# <u>Exhibit 2</u>

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DARRELL GRAYSON,                    )
                                    )
            Plaintiff,              )
                                    )
      v.                            )          CASE NO. 2:06-cv-1032-WKW
                                    )
RICHARD ALLEN, *et al.,*            )
                                    )
            Defendants.             )

## **ORDER**

A status conference was held on April 25, 2007, in which the parties discussed scheduling

matters in this case.  It is ORDERED that the parties shall file an amended Rule 26(f) report **on or**

**before April 27, 2007**, assuming a proposed trial date of June 26, 2007.

Done this 26th day of April, 2007.

            /s/  W.  Keith Watkins
      UNITED STATES DISTRICT JUDGE

# <u>Exhibit 3</u>

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **EDWARD JEROME HARBISON** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:06-cv-01206** |
| | ) | **Judge Trauger** |
| **GEORGE LITTLE, in his official capacity as** | ) | |
| **Tennessee's Commissioner of Correction;** | ) | |
| **RICKY BELL, in his official capacity as Warden,** | ) | |
| **Riverbend Maximum Security Institution;** | ) | |
| **JOHN DOE PHYSICIANS 1-100;** | ) | |
| **JOHN DOE PHARMACISTS 1-100;** | ) | |
| **JOHN DOE MEDICAL PERSONNEL 1-100;** | ) | |
| **JOHN DOE EXECUTIONERS 1-100; and** | ) | |
| **JOHN DOES 1-100,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM</u>

Pending before the court is the Motion to Dismiss filed by defendants George Little, Ricky Bell, and the "TDOC [Tennessee Department of Corrections] Employee John Does" (Docket No. 15), to which the plaintiff has responded (Docket No. 18). For the reasons discussed herein, the defendants' motion will be denied in part and granted in part.

1

## **FACTS and PROCEDURAL HISTORY**

The plaintiff is a condemned inmate at Riverbend Maximum Security Institution ("RMSI") in Nashville, Tennessee.[1]  On July 17, 2006, the Tennessee Supreme Court scheduled the plaintiff's execution for October 11, 2006.  On July 24, 2006, the plaintiff sent Commissioner George Little a letter that expressed his objections to Tennessee's lethal injection protocol.[2]  On August 2, 2006, Little denied the plaintiff's objections and his request for relief.  On August 16, 2006, the Tennessee Supreme Court rescheduled the plaintiff's execution for February 22, 2007.

Tennessee's lethal injection protocol was written by Warden Ricky Bell who, according to the plaintiff, "has no medical or scientific training nor a college education."  (*See* Docket No. 1 ¶ 14.)  No member of the medical community was involved in the creation of this protocol, which was "adopted without any medical research or review to determine that a prisoner would not suffer pain beyond that attendant to the extinguishment of life."  (*See id.*)

The protocol requires the participation of "the Commissioner, the Warden, the Deputy Warden, the Administrative Assistant, the Death Watch Supervisor and assigned officers, a Chaplain, a Medical Doctor and associate, an 'Execution Team,' an 'IV Team,' and an 'Extraction Team.'"[3]  (*See id.* ¶ 15.)  The defendants, claiming a privilege under Tenn. Code Ann. § 10-7-504(h) (2005), have refused to reveal the identities of any of those participants

---

[1]Unless otherwise noted, all facts have been drawn from the plaintiff's Complaint (Docket No. 1) and from his Response to Motion to Dismiss of Defendants Little and Bell (Docket No. 18).

[2]Tennessee's lethal injection protocol is not yet a part of the record in this case.  While the plaintiff's Complaint does not reveal the factual bases of his statements about the protocol, the defendants have not contested the accuracy of those statements.

[3]The protocol is silent as to how these teams are to be selected and whether their members are to have any special training or qualifications.

2

except for the warden.

The protocol prescribes the sequence of events that must take place during an execution by lethal injection. According to its provisions, Warden Bell or his assistant, accompanied by the "Extraction Team" will, at an appointed time, remove the plaintiff from his cell, secure him to a gurney, and take him to a designated area in the "death chamber," where the execution is to take place. (*See id.* ¶ 22.) Someone, "most likely [Warden] Bell," will then prepare syringes with the chemicals to be used for the lethal injection. (*See id.* ¶ 23.) The syringes will not be labeled with the names of the chemicals. Someone, "most likely [Warden] Bell," will then mix powdered sodium pentothal, one of the chemicals to be used during the execution, with water. (*See id.* ¶ 24.) Once in liquid form, sodium pentothal "starts to deteriorate immediately." (*Id.*)

Intravenous ("IV") technicians then will insert a catheter into each of the plaintiff's arms, attach tubing, and start an IV of saline solution.[4] They will then leave the chamber. The catheters will then be connected to an injection delivery device, which is located in a room adjacent to the death chamber. On Warden Bell's signal, the executioner will inject the following drugs into the delivery device in the amount and sequence indicated:

1.  sodium pentothal (also known as sodium thiopental): fifty milliliters (five grams diluted by forty-eight milliliters of diluent);

2.  saline: fifty milliliters;

3.  pancuronium bromide (also known as Pavulon): fifty milliliters;

---

[4]A physician who is able to perform a "cutdown procedure" if the IV technicians are unable to find an adequate vein in which to insert the catheters is to be waiting in a designated area, but is not to be present during the catheterization process. (*See* Docket No. 1 ¶ 26.) The protocol is silent as to whether this physician must have any particular qualifications.

3

    4.      pancuronium bromide (also known as Pavulon): fifty milliliters;

    5.      saline: fifty milliliters;

    6.      potassium chloride: fifty milliliters; and

    7.      potassium chloride: fifty milliliters.

All of these drugs, which will have been obtained per Warden Bell's request to the TDOC, are to be administered within a span of two to two and one-half minutes. Five minutes after the drugs have been injected into the tubes, a physician will examine the plaintiff and pronounce whether he has died. If the plaintiff is still alive, the process will be repeated.

According to the plaintiff,[5] sodium pentothal, the first drug in the sequence, is a short-acting barbiturate used for its alleged anesthetic effects. It is used when performing surgeries because it enables an anesthesiologist quickly to awaken a patient, should surgical complications arise. The plaintiff claims that "[s]everal regularly prescribed drugs at [RMSI] interfere with the ability of sodium pentothal to act properly as an anesthetic." (*See* Docket No. 1 ¶ 11 (noting that prisoners are permitted to take Valium shortly before their execution, which may interfere with sodium pentothal's effectiveness).) The plaintiff claims that, when administered according to the Tennessee protocol, the dosage of this drug used may not completely anesthetize an inmate undergoing lethal injection, even without the potential interference of other prescribed drugs such as Valium.

The second drug, pancuronium bromide, is a neuromuscular blocking agent that paralyzes

---

[5]The following descriptions of the drugs used during the lethal injection protocol and their effects are per the plaintiff's depictions. (*See* Docket No. 1 ¶¶ 40-77.) Similar descriptions have been used, however, in prior cases involving the same drugs. *See, e.g., Morales v. Hickman*, 438 F.3d 926, 928-29 (9th Cir. 2006); *Abdur'Rahman v. Bredesen*, 181 S.W.3d 292, 302 (Tenn. 2005).

an individual but does not affect his brain or nervous system.  Accordingly, it does not impact consciousness or the ability to think or to feel pain.  It does, however, paralyze the diaphragm, which makes breathing impossible.  It also paralyzes all skeletal muscles, including those in an individual's face, such that an individual who has been injected with this drug would be unable to show expressions of pain or terror, should they be experienced.  Tennessee has prohibited the use of pancuronium bromide in euthanizing animals.  The plaintiff claims that the use of this drug to paralyze a condemned inmate "greatly increases the risk that a conscious prisoner will be subjected to a painful and protracted death."  (*See id.* ¶ 63.)

Potassium chloride, the third drug, causes cardiac arrest.  Because it activates all nerve fibers in the venous system, this drug, used alone, produces extreme pain.  The plaintiff asserts that, if he is conscious during the administration of this drug, the pancuronium bromide will prevent him from expressing this pain.  According to the plaintiff, "[t]he person being lethally injected under Tennessee's protocol actually dies from the suffocation caused by the pancuronium bromide and the resulting anoxic state, and not from cardiac arrest due to the administration of potassium chloride."  (*See id.* ¶ 78.)

Using 42 U.S.C. § 1983 as a vehicle for his claims, the plaintiff seeks (1) temporary, preliminary, and permanent injunctive relief to prevent the defendants from executing him under Tennessee's current lethal injection protocol; (2) a judgment declaring the use of pancuronium bromide to be unconstitutional and enjoining the defendants from its dispensation, procurement, or use; and (3) a declaration that the current protocol is unconstitutional under the Eighth, Ninth, and Fourteenth Amendments and that, as such, its use will be enjoined.

The defendants have moved to dismiss the plaintiff's claims on the grounds that (1) the plaintiff has been dilatory in filing his Complaint seeking equitable relief; (2) the statute of

5

limitations bars the plaintiff's action; (3) the plaintiff's challenge to Tennessee's lethal injection

protocol has already been adjudicated and rejected; and (4) the plaintiff has failed to state an

equal protection claim.  (*See* Docket No. 15 at 1-2.)


I.     **The plaintiff has not been dilatory in filing his Complaint.**

The defendant alleges that this case must be dismissed because the plaintiff has delayed

inexcusably in bringing his challenges to the execution protocols.  In determining whether or not

to grant a stay of execution, the Sixth Circuit has held that "equity [does] not permit the

consideration of a claim" that has been needlessly and inexcusably withheld.  *In re Sapp*, 118

F.3d 460, 464 (6th Cir. 1997).  Indeed, the Sixth Circuit has repeatedly reversed stays where the

plaintiff's undue delay has imposed upon the state's execution schedules.  *See Alley v. Little*, 181

Fed. App'x 509, 513 (6th Cir. 2006); *Hicks v. Taft*, 431 F.3d 916, 916-17 (6th Cir. 2005); *see

also White v. Johnson*, 429 F.3d 572, 574 (5th Cir. 2005) ("'Given the State's significant interest

in enforcing its criminal judgments, there is a strong equitable presumption against' last minute

equitable requests.") (quoting *Nelson v. Campbell*, 541 U.S. 637, 650 (2004)).  This case makes

no such request. The plaintiff has not moved for a stay of execution, and the schedule established

at the status conference held January 25, 2007 allows for the adjudication of the plaintiff's

claims in advance of his February 22, 2007 execution date.   The State's significant interest in

enforcing its criminal judgments will not be impeded by this case.

Therefore, the court must determine whether, although the plaintiff filed his claims well

enough in advance to avoid the necessity of a stay, he nevertheless so unduly delayed in filing as

to require dismissal.  The Sixth Circuit has been quite clear that—with regard to inmates seeking

stays—unreasonable delay is fatal to a plaintiff's claims.  *See Alley*, 181 Fed. App'x at 513;

6

*Hicks*, 431 F.3d at 916.  But it has not provided the court with a standard for determining when delay becomes unreasonable, and it has not addressed the issue at all in the absence of a request for a stay.

At least one other circuit has held that, for plaintiffs seeking stays, dismissal is required where "the inmate could have brought the action at an earlier time, which would have allowed the court to consider the merits without having to utilize last minute requests."  *See White v. Johnson*, 429 F.3d at 574.  That is an unworkable standard.  The inquiry cannot be whether the inmate "could have brought the action at an earlier time."  *See id.*  Every case on this court's docket could conceivably have been brought at an earlier time, and yet this court has a duty to exercise jurisdiction over those cases.  *See Allegheny County v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959) (noting "the duty of a [d]istrict [c]ourt to adjudicate a controversy properly before it" in analyzing abstention doctrines).  Particularly where, as in this case, the court's schedule allows for determination of the plaintiff's claims in advance of his execution date, dismissal is not warranted simply because the claims could have been brought earlier.  *See Monge v. California*, 524 U.S. 721, 732 (1998) (noting the "vital importance" of decisions made in the death penalty context).

On July 17, 2006, the Tennessee Supreme Court set October 11, 2006, as the date for the plaintiff's execution.  Two days later, on July 19, 2006, the plaintiff informed Commissioner George Little, via letter, of his objections to the current lethal injection protocol.  On August 2, 2006, Commissioner Little informed the plaintiff, via letter, that the lethal injection protocol would not be altered and, on August 15, 2006, the Tennessee Supreme Court moved the execution date from October 11, 2006 to February 22, 2007.  The plaintiff filed this case on December 19, 2006.

7

The issue as to when the plaintiff's claims first became ripe is not before the court; however, the Sixth Circuit has recently suggested that a plaintiff's Eighth Amendment claims may become ripe at the establishment of his first execution date. *See Alley*, 181 Fed. App'x at 513 ("The threat of the grievous harms of lethal injection loomed at least since the establishment of the 2004 execution date."). Assuming that the plaintiff's claims first became ripe on July 17, 2006, he has delayed exactly 155 days in filing his case. Considering the time necessary for a plaintiff to find legal representation and for counsel to investigate, research and substantiate the plaintiff's claims and then to put those claims into the form of a legal complaint, the court does not find a delay of 155 days to be so unreasonable as to require dismissal of the plaintiff's claims on the basis of undue delay. *See Patton v. Bearden*, 8 F.3d 343, 347 (6th Cir. 1993) ("The defense of laches requires an inexcusably long delay in commencing the action which causes prejudice to the other party.").

## II.     The plaintiff's action is not barred by the state of limitations.

The defendants also move to dismiss the plaintiff's claims as barred by the applicable statute of limitations. The Sixth Circuit has held that the one-year statute of limitations set forth in Tenn. Code. Ann. § 28-3-104(3) applies to all § 1983 actions brought within the state of Tennessee. *See Berndt v. Tennessee*, 796 F.2d 879, 883 (6th Cir. 1986); *Cox v. Shelby State Cmty. Coll.*, 48 Fed. App'x 500, 507 (6th Cir. 2002).

As a preliminary matter, the plaintiff asserts that, because the defendants have raised the statute of limitations issue in a Rule 12(b)(6) motion to dismiss and not in an answer, dismissal is appropriate only if it appears on the face of his Complaint that the limitation period has expired. The Sixth Circuit has held that, under Rule 12(b)(6), "[d]ismissal of a complaint because it is

8

barred by the statute of limitations is proper when 'the statement of the claim affirmatively shows that the plaintiff can prove *no* set of facts that would entitle him to relief.'" *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 946 (6th Cir. 2002) (quoting *Duncan v. Leeds*, 742 F.2d 989, 991 (6th Cir. 1984)) (emphasis in original); *see also M.S. Chambliss v. Coca-Cola Bottling Corp.*, 274 F. Supp. 401, 408 n.14 (E.D. Tenn. 1967) ("It now seems to be well-settled that, if the failure to comply with a limitations period appears on the face of the complaint, that defect may be raised by a motion to dismiss.").

The plaintiff's Complaint, on its face, does not demonstrate that the statute of limitations bars the plaintiff's claims. However, the defendants have sought to marshal the discovery rule to demonstrate that the statute of limitations must necessarily have been triggered over a year before the plaintiff filed this action. Under the discovery rule, "[t]he statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Ball v. Union Carbide Corp.*, 385 F.3d 713, 722-23 (6th Cir. 2004); *see also Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984). Typically the discovery rule extends the limitations period past the point that an injury has occurred, to the point that it is discovered or should reasonably be discovered. *Hicks v. Hines Inc.*, 826 F.2d 1543, 1545 (6th Cir. 1987) (citing *Urie v. Thompson*, 337 U.S. 163, 165 (1949) (first defining the discovery rule as extending the statute of limitations period in an occupational injury action)); *Sevier*, 742 F.2d at 273 (the statute is triggered when the plaintiff becomes "aware of facts sufficient to put a reasonable person on notice that he *has suffered* an injury as a result of wrongful conduct") (emphasis added).

Utilizing the discovery rule to defeat a claim for prospective injunctive relief where no injury has yet occurred—on the basis that the plaintiff should have anticipated his future injury

9

at some point before he did anticipate it—would be a novel application of that doctrine. *See Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996) ("Under federal law as developed in this Circuit, the statute of limitations period begins to run when the plaintiff knows or has reason to know *that the act providing the basis of his or her injury has occurred*.") (emphasis added). The court will not take the opportunity to apply the discovery rule in this novel fashion, where neither the injury nor the act providing the basis for the injury has yet occurred.

Further—aside from the fact that the plaintiff has yet to suffer the injuries alleged in his Complaint—it is not at all clear on the face of the Complaint when the plaintiff discovered that he would suffer those injuries. The defendant alleges that the plaintiff must have known about the lethal injection protocol as early as April 2000, when the lethal injection protocol was used in the execution of Robert Glen Coe. However, regardless of the plaintiff's awareness or lack of awareness of Robert Glen Coe's fate, knowledge, in the abstract, of Tennessee's lethal injection protocol cannot have alerted the plaintiff to his own specific cause of action. For instance, Tennessee might well have altered the protocol after the Coe execution, such that a different protocol—one to which the plaintiff had no objection— would apply to his execution.

A statute of limitations period cannot begin to run before the time at which the plaintiff could file a justiciable claim to prevent that injury. *See Ruff v. Runyon*, 258 F.3d 498, 502 (6th Cir. 2001) (holding that a *Bivens* claim "did not accrue until the charges against [the] plaintiffs were finally dismissed because prior to that time, plaintiffs did not 'know' of their injury for purposes of the statute of limitations"); *see also Shamaeizadeh v. Cunningham*, 182 F.3d 391, 396 (6th Cir. 1999) (holding that the statute of limitations in a § 1983 action could not begin to run until disposition of a related criminal proceeding, because until that time, the § 1983 claims "have not yet accrued.").

10

The plaintiff did not have a justiciable claim merely by virtue of the fact of Robert Glenn Coe's execution. The Supreme Court has held that "[i]t goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). An actual case or controversy requires "'a personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions.'" *Id*. (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). Further, "[a]bstract injury is not enough," but instead a plaintiff must show that he or she "has sustained or is immediately in danger of sustaining some direct injury," and that injury must be "real and immediate," not "conjectural or hypothetical." *Lyons*, 461 U.S. at 101-02 (internal quotations omitted).

The plaintiff was not "immediately in danger of sustaining some direct injury," *id*., in April 2000 merely by virtue of the fact that the state had executed a different prisoner by means of a particular lethal injection protocol. Mr. Coe's execution rendered the plaintiff's prospective injury neither real nor immediate. On the face of the Complaint, it cannot be said that the plaintiff discovered his injury over a year before he filed this case on December 19, 2006. Even if the court were to apply the discovery rule in the novel fashion suggested by the defendants, it could not dismiss this action on that basis.

## III.    The plaintiff's challenge to Tennessee's lethal injection protocol is not precluded by an earlier decision of the Tennessee Supreme Court nor are the facts that he has asserted insufficient to warrant relief.

The defendants also move to dismiss the plaintiff's Eighth Amendment and due process challenges to Tennessee's lethal injection protocol on the grounds that (1) the Tennessee

11

Supreme Court in 2005 adjudicated and rejected such a challenge; and (2) the facts of the

plaintiff's case are "insufficient to warrant relief" and, as such, his claims should be "summarily

dismissed on the merits."  (*See* Docket No. 16 at 9 (citing *Abdur'Rahman v. Bredesen*, 181

S.W.3d 292 (Tenn. 2005), *cert denied*, 126 S.Ct. 2288 (2006)).)  Thus, as noted by the plaintiff,

the defendants appear to base their arguments about preemption on two separate grounds: (1) the

notion that the plaintiff's claim is precluded by the Tennessee Supreme Court's decision in

*Abdur'Rahman*; and (2) the assertion that the plaintiff's claims fail under the conventional

motion to dismiss standard.  (*See* Docket No. 18 at 14-15.)  The court will address each of these

grounds in turn.

> **A.    The Tennessee Supreme Court's decision in Abdur'Rahman does not preclude the plaintiff from bringing his claim.**

The defendants claim that, because "Tennessee's highest court has . . . already squarely

addressed and rejected the same constitutional challenges to the state's lethal injection protocol

that the plaintiff now presents to this [c]ourt," this court need not revisit the plaintiff's

arguments.  (*See* Docket No. 16 at 9-11 (citing *Abdur'Rahman v. Bredesen*, 181 S.W.3d 292

(Tenn. 2005).)  Although the plaintiff describes the defendants' arguments as being based on

both *res judicata* [claim preclusion] and collateral estoppel [issue preclusion], he argues only

against claim preclusion.  To the extent that the defendants are asserting that the plaintiff's

claims are barred by claim and/or issue preclusion, this assertion fails.[6]

---

[6]If the defendants, instead, mention the *Abdur'Rahman* case only because it qualifies as
unbinding precedent that is relevant to this court's ultimate decision, such argument is more
properly reserved for the later stages of this case.  (*See* Docket No. 16 at 11 (recognizing, but not
refuting, the plaintiff's likely contention that "this state court precedent is merely persuasive
authority and, thus, not binding on this [c]ourt).)

1.    *The plaintiff's claims are not barred by claim preclusion.*

A claim will be barred by prior litigation only if all of the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action that was litigated or that should have been litigated in the prior action; and (4) an identity of the causes of action. *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997).

The defendants do not even argue—and, indeed, common sense dictates otherwise—that privity exists between the plaintiff here and the plaintiff in *Abdur'Rahman*. In addition, they do not allege that the plaintiff here qualifies as a person "represented" by the plaintiff in that case. *See id.* (indicating the manner in which one person might be considered to be "represented" by another party). As such, the defendants have failed to demonstrate the existence of the second factor in the claim preclusion analysis, *i.e.*, that this case is a "subsequent action between the same parties or their privies." The plaintiff's claim, therefore, is not subject to claim preclusion.

2.    *The plaintiff's claims are not barred by issue preclusion.*

Under the doctrine of issue preclusion, federal courts are generally required to give preclusive effect to state-court judgments whenever the courts of the state from which the judgment emerged would do so. *See Haring v. Prosise*, 462 U.S. 306, 313 (1983) (internal citation omitted). Under Tennessee law, the party seeking to invoke the doctrine must demonstrate that (1) the issue to be precluded is identical to the issue decided in the earlier suit; (2) the issue to be precluded was actually litigated and decided on its merits in the earlier suit; (3) the judgment in the earlier suit has become final; (4) the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier suit; and (5) the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier suit to

13

litigate the issue to be precluded. *See Beaty v. McGraw*, 15 S.W.3d 819, 824-25 (Tenn. Ct. App. 1998).

A brief examination of these factors reveals that the defendants have not demonstrated the existence of the fourth or the fifth factor.[7] As noted under the claim preclusion analysis above, there is no basis for the claim that privity somehow exists between the plaintiff here and the plaintiff in *Abdur'Rahman*. Moreover, the plaintiff here had no full and fair opportunity to litigate, in the *Abdur'Rahman* case, the issues he now raises. Thus, the notion that the plaintiff's claims fail under the doctrine of issue preclusion has no merit.

> **B.     The plaintiff has stated a claim upon which relief could be granted.**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will accept as true the facts as the plaintiff has pleaded them. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002); *Performance Contracting, Inc. v. Seaboard Surety Co.*, 163 F.3d 366, 369 (6th Cir. 1998). "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Performance Contracting*, 163 F.3d at 369.

The court will not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Myers v. United States*, 636 F.2d 166, 168-69 (6th Cir. 1981) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). This narrow inquiry is based on whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can

---

[7]The plaintiff also makes what may be meritorious arguments that the issues in this case are not identical to those litigated in *Abdur'Rahman*. (*See* Docket No. 18 at 16.)

ultimately prove the facts alleged.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)

(quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  "Indeed it may appear on the face of the

pleadings that recovery is very remote and unlikely but that is not the test."  *Scheuer*, 416 U.S. at

236.  Rather, challenges to the merits of a plaintiff's claim should be "dealt with through

summary judgment under Rule 56."  *Swierkiewicz*, 534 U.S. at 514.

The defendants devote the majority of their argument as to why the plaintiff's claims

"should be dismissed on the merits, as the facts are insufficient to warrant relief" to detailed

descriptions of the Tennessee Supreme Court's decision in *Abdur'Rahman* and of Tennessee's

lethal injection protocol.  (*See* Docket No. 16 at 9-15.)  At no time, however, do they explain

how the plaintiff has failed to state a claim such that their motion to dismiss should be granted

under Rule 12(b)(6).

The defendants' motion to dismiss is not an invitation for the court to delve into the

merits of the plaintiff's underlying claims.[8]  *See Swierkiewicz*, 534 U.S. at 514.  Rather,

accepting, as it must, the facts as the plaintiff has pleaded them, the court finds that he has

presented a viable claim that Tennessee's lethal injection procedure violates his Eighth

Amendment and due process rights.  (*See, e.g.*, Docket No. 1 ¶ 53 (listing plaintiff's allegations

that he would be "inadequately anesthetized under the Tennessee protocol . . . and . . . would

experience an excruciatingly painful and horrifying death as a result of the conscious

asphyxiation caused by the use of pancuronium bromide and the painful internal burn and

---

[8] Comparatively, motions for a preliminary injunction do require an examination of a claim's merits.  *See Alley v. Little*, 181 Fed. App'x 509, 513 (6th Cir.) (finding that "the small likelihood" of a condemned inmate's success on the merits of his challenge to Tennessee's lethal injection protocol "ultimately decides the matter" of whether his execution should be subject to a preliminary injunction).

cardiac arrest caused by the introduction of potassium chloride").)  As such, the defendants'

motion to dismiss based on the plaintiff's purported failure to state a claim will be denied.

**IV.    The plaintiff has failed to state an equal protection claim.**

The plaintiff alleges that his execution by lethal injection will deny him equal protection

in violation of the Fourteenth Amendment because, while the defendants intend to use

pancuronium bromide as part of the lethal injection protocol, the state has prohibited the use of

this and other neuromuscular blocking agents during the euthanization of non-livestock animals.

(*See* Docket No. 18 at 20.)

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall

"deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend.

XIV, § 1.  To establish a claim for relief under the Equal Protection Clause, a plaintiff must

demonstrate that the government treated him disparately as compared to similarly situated

persons and that such disparate treatment either burdens a fundamental right, targets a suspect

class, or has no rational basis.  *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,*

*Mich.,* 470 F.3d 286, 298 (6th Cir. 2006).

Here, the plaintiff alleges that the defendants' use of pancuronium bromide will infringe

on his fundamental rights.  (*See* Docket No. 18 at 20-21 (alleging that Tennessee's lethal

injection protocol infringes on the fundamental rights of prison inmates).)  He fails to

demonstrate, however, that such a use will result in his disparate treatment as compared to other

similarly situated persons.  *See Club Italia Soccer & Sports Org., Inc.*, 470 F.3d at 298;

16

*Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006) ("The threshold element of an equal protection claim is disparate treatment . . . .").  Indeed, the plaintiff has not cited—nor has the court's research revealed—a single case in which human beings and animals are defined as "similarly situated."[9]  As such, the plaintiff cannot make out an equal protection claim on these grounds, and the defendants' motion to dismiss this claim will be granted.

<u>**CONCLUSION**</u>

For the reasons discussed above, the defendants' Motion to Dismiss will denied in part and granted in part.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge

_____

[9]A Nevada case addressed similar, although not identical, issues.  *See Carter v. Lamb*, 872 F. Supp. 784, 790 (D. Nev. 1995) (denying a plaintiff's claim that defendants violated her equal protection rights in favor of the rights of livestock when they plowed roads to allow cattle ranchers to feed and care for their animals but neglected to plow the road leading to her residence).

17