IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WILLIE MCNAIR, | ) |
| | ) |
| Plaintiff/Counter-Defendant, | ) |
| | ) |
| v. | ) No. 2:06-cv-00695-WKW-CSC |
| | ) |
| RICHARD ALLEN, Commissioner, | ) |
| Alabama Deparment of | ) |
| Corrections, et al., | ) |
| | ) |
| Defendants/Counter-Plaintiffs. | ) |

| | |
|---|---|
| JAMES CALLAHAN, | ) |
| | ) |
| Plaintiff/Counter-Defendant, | ) |
| | ) |
| v. | ) No. 2:06-cv-00919-WKW-CSC |
| | ) |
| RICHARD ALLEN, et al., | ) |
| | ) |
| Defendants/Counter-Plaintiffs. | ) |

**DEFENDANTS' MOTION FOR PARTIAL CLOSURE
OF COURT PROCEEDINGS DURING THE
TESTIMONY OF CERTAIN WITNESSES**

Defendants respectfully move this Court to enter an order that would require limited closure of court proceedings to the public during the testimony of certain members of the execution team.[1] As set forth below, Defendants, and the State of Alabama, have a compelling

---

[1] Defendants do not ask in this motion that the trial of this action be closed in its entirety. The Alabama Department of Corrections reserves the right to file such a motion requesting closure in order to protect the confidentiality of its lethal injection protocol. That matter is still under consideration by the Department, which is aware of this Court's pretrial order and the deadlines therein. If such a motion is filed, then this request for partial closure, which would apply only to the potential testimony of certain witnesses, should be considered a request for alternative relief in the event the motion for total closure is denied.

1

interest in protecting the anonymity of those who participate in executions. The parties agree that these witnesses (if they are in fact required to testify at trial) will not be asked to disclose their name or other identifying information, such as their address. Defendants seek reasonable additional measures that would prevent the public from <u>viewing</u> the testimony of these witnesses and thus being permitted to recognize them. Defendants do not seek here to block the public from <u>hearing</u> such testimony, or otherwise learning the substance of their testimony, either contemporaneously or through release of transcripts after the fact.

This motion addresses only those circumstances where members of the execution team may be called upon to testify. Specifically, this motion addresses only those potential witnesses designated as EMT-1, EMT-2, DOC-1, DOC-2, and RN. On information and belief, Plaintiffs have no present intention to call DOC-1, DOC-2, or RN. While Plaintiffs have issued subpoenas for EMT-1 and EMT-2, Defendants have filed (or will file) a separate motion to quash. Thus, it may be that none of these witnesses are called upon to testify and that this motion will be moot. But in the event that this Court denies Defendants' Motion to Quash the subpoenas to EMT-1 and EMT-2, or in the event either party later seeks to call DOC-1, DOC-2, or RN, then Defendants respectfully ask that this Court close that portion of the trial or otherwise permit those witnesses to testify in a matter that will not be viewed by the public.

I.  **COURTS MAY CLOSE PORTIONS OF A TRIAL, OR REQUIRE OTHER REASONABLE MEASURES, IN ORDER TO PROTECT IMPORTANT STATE INTERESTS.**

Defendants recognize the importance of public access to judicial proceedings. The public's right of access to criminal proceedings also applies to civil proceedings "which pertain to the release or incarceration of prisoners and the conditions of their confinement." *Newman v. Graddick*, 696 F.2d 796, 801 (11th Cir. 1983). The right of access is not absolute, however.

Judicial proceedings may be closed where "necessary to achieve a legitimate purpose." *Id.* at 802. The Court should consider "[l]ess intrusive alternatives" to closure and restrictions on access "must be narrowly drawn with only that part of the proceeding as is necessary closed." *Id.* (remanding so that the trial court could hold a hearing and articulate its reasons for excluding the press).[2]

When a court is considering a partial closing, the standard is less demanding. "When limited closure is at issue, the prejudice asserted need only supply a 'substantial reason' for closure." *U.S. v. Doe*, 63 F.3d 121, 129 (2nd Cir. 1995). "The quantum of prejudice that the movant must show increases the more extensive the closure sought would be." *Huminski v. Corsones*, 396 F.3d 53, 86 (2nd Cir. 2005) (citing *Doe*, *supra*).

The interests that may trump the right to access take many different forms. Court proceedings may, in appropriate circumstances, be closed where necessary to protect trade secrets. *See In re Iowa Freedom of Info. Council*, 724 F.2d 658, 664 (8th Cir. 1983). Other such interests include the well-being of a minor, *see Globe Newspaper Co. v. Super. Ct. for Norfolk County*, 457 U.S. 596, 607 (1982); privacy interests of prospective jurors, *see Press-Enter. Co. v. Super. Ct. of Cal.*, 464 U.S. 501, 511-512 (1984); privacy interests in wiretapped conversations,

---

[2] Most cases on these issues involve criminal trials, where closure implicates not only the public's First Amendment rights, but also the criminal defendant's rights under the Sixth Amendment (including the right to confront witnesses). To close a criminal trial to the public, "[1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure." *Waller v. Georgia*, 467 U.S. 39, 48 (1984). Although the decisions involving criminal cases must consider additional interests and more stringent standards, they can be instructive on this Court's ability to close portions of the present trial. For example, in *U.S. v. Valenti*, the Eleventh Circuit held that trial court did not err by closing certain bench conferences to the press, but that transcripts should be released once the "danger of prejudice" has passed. 987 F.2d 708 (11th Cir. 1993). If such measures are appropriate in criminal proceedings, then certainly they can be used in civil proceedings that do not implicate the Sixth Amendment.

3

*see In re New York Times Co*, 828 F.2d 110, 116 (2d. Cir. 1987); and a criminal defendant's right to a fair trial, *see In re Herald Co.*, 734 F.2d 93, 100 (2nd Cir. 1984).

In addition, protecting the confidentiality of government activities, such as ongoing undercover investigations, may justify closing portions of a trial to the public. *See In re Herald Co.*, 734 F.2d at 100. In *Broadhurst v. West*, 2006 WL 89946 (S.D.N.Y. 2006) (unreported), a district court denied habeas relief to an inmate who complained that his criminal trial was improper. The defendant specifically claimed that the trial court erred by granting the prosecution's motion to close the courtroom during testimony of an undercover police officer. However, the habeas court denied relief and found that the state had a legitimate interest in protecting the anonymity of the officer. *Id.* The court noted further that the closure was narrowly tailored because it was limited to the officer's testimony and did not apply to other portions of the trial, and the defendant (and the defendants' family members) were permitted to remain. *Id.*

In this case, and as shown below, the State has a legitimate and important interest in protecting the privacy and anonymity of execution team members. That interest will be prejudiced if the public can come to court and see who the execution team members are. The execution team members would then potentially be subject to harassment and retaliation from persons who oppose the death penalty, and, as demonstrated below, such harassment and retaliation has occurred in other cases. However, reasonable accommodations can be made that will protect that interest and that will still allow the Court to have the information it needs to reach a decision in this case and that will allow public scrutiny of the basis for that decision.

4

**II.    THE STATE HAS A COMPELLING INTEREST IN PROTECTING THE ANONYMITY OF MEMBERS OF THE EXECUTION TEAM.**

The defendants have a strong interest in measures that will protect the anonymity of persons who assist in the execution process. Numerous other courts have recognized this interest, as demonstrated by the following quotations:

> Defendants' fear that members of the execution team and their families could be subject to retaliation if their identities became known to a wider circle of people, including the prison's inmates, certainly is a "legitimate governmental interest."

Thompson v. Department of Corrections, 18 P.3d 1198, 1207 (Cal. 2001) (upholding prison regulations concerning access to spiritual advisor).

> The identity of the execution team is kept confidential for the security of the institution and for the safety of the staff members and their families. Members of the execution team and their families may be subject to retaliation and harassment if their identities became known throughout the institution and the public at large.

Workman v. Campbell, 2002 WL 869963 (Tenn. App. 2002) (unreported decision) (upholding prison regulation concerning access to personal spiritual advisor).

> [T]he Defendants have a strong interest in preserving the safety, and hence anonymity, of the execution team members and those involved with the process. . . . The Defendants are therefore entitled to scrupulously protect those interests, both during discovery and at any trial, in a manner that they deem most appropriate, to the extent that manner does not unduly interfere with [the plaintiff's] need to obtain discovery of relevant information.

Moore v. Rees, ___ F.Supp.2d ___, 2007 WL 1035013 (E.D.Ky. March 30, 2007)(encouraging counsel to come to an agreement concerning the requested depositions). See also, Morales v. Tilton, 2006 WL 3953137 (slip copy) (N.D. Cal. Sept. 14, 2006) (approving redaction of identifying information from documents released to the press) ("the Court has recognized that

5

Defendants have a valid traditional and historical interest in maintaining the anonymity of members of the execution team.").

A very quick look at anti-death penalty websites reveals an effort to expose individuals who participate in executions, and thus shows that the State's interest would be prejudiced if execution team members are exposed to the public. For example, a Norwegian resident who is a member of a prisoner support group said she named doctors who participate in executions in a post she made on a lethal-injection blog in hopes that it would open these doctors to public scrutiny. http://law.fordham.edu/ihtml/news-2itndetails.ihtml?id=638&nid=468 (last visited May 23, 2007). Another anti-death website lists execution team members and highlights those names for easy identification. http://lethal-injection-florida.blogspot.com/2007/exectuion-team-members-in-botched.html (last visited May 23, 2007). That same website had an entry entitled "A Florida butcher – called medical expert – disclosed in Florida." Id. The Department of Corrections may be unable to find qualified persons to carry out state law if such individuals fear they will be subject to the same treatment.

The interest asserted is therefore a real and legitimate one, and is sufficiently important to justify an exception to the right of full public access to judicial proceedings. The interest will be prejudiced if the execution team members are exposed by a requirement that they testify publicly. Therefore, the circumstances of this case warrant a partial closing of the courtroom during the testimony of these particular witnesses.

### III. THE REQUESTED PROCEDURES ARE REASONABLE, NARROWLY-TAILORED STEPS THAT WILL NOT IMPEDE PUBLIC ACCESS TO JUDICIAL PROCEEDINGS.

There are a number of ways to address Defendants' concerns that will likewise protect the public's interest in open proceedings. For example, instead of closing the entire trial, the

court could be closed only when implicated witnesses are called to testify. The transcripts of their testimony may be released after the fact, and Defendants do not ask that testimony concerning the witnesses' qualifications and experience be shielded from the public eye. Such a procedure would not impair the ability of the Court or Plaintiffs' counsel from procuring such testimony that the Court deems is proper.

Other procedures, equally acceptable to the Defendants, could be ordered that would prevent the public from viewing the witnesses but would allow the public contemporaneously to hear the testimony. For example, Defendants would have no objection to a system that broadcast the audio of such testimony to interested persons (so long as it remains true that Plaintiffs' counsel have no intention of asking the witnesses to state their name or other identifying information). In the alternative, the witness could testify from behind a screen that would block the public from viewing the witness but that would permit the Court, the parties, and counsel to see the witness. Many courts have permitted witnesses to testify from behind a screen in cases where it is important to protect a witness's anonymity, such as where a witness is an undercover police officer involved in ongoing investigations or whose safety may be compromised. *See e.g. U.S. v. Lucas*, 932 F.2d 1210, 1216-1217 (8th Cir. 1991), *cert. denied*, 502 U.S. 949 (1991); *U.S. v. George*, 1992 WL 200027 (D.D.C. 1992) (unreported).

Defendants are open to other accommodations the Court may suggest. Defendants ask only that the public not be permitted to view these witnesses. Under the circumstances, and where Defendants have demonstrated a legitimate interest that would be prejudiced without such measures, a partial closing of the courtroom is justified under the law.

Defendants therefore respectfully ask that this Court order that the trial in the above-styled matter be closed during the testimony of members of the execution team, or that other measures be taken to prevent the public from viewing their testimony.

Respectfully submitted,

          **TROY KING (KIN047)**
          **ATTORNEY GENERAL**
          **BY:**

          **s/ J. Clayton Crenshaw**
          J. Clayton Crenshaw (CRE007)
          Assistant Attorney General

          **s/ James W. Davis**
          James W. Davis (DAV103)
          Assistant Attorney General

OF COUNSEL:
Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 242-7300
(334) 353-8440 Fax
Email: ccrenshaw@ago.state.al.us
       jimdavis@ago.state.al.us

## CERTIFICATE OF SERVICE

This is to certify that on the 13th day of September, 2007, a copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system, which will electronically send a copy of the same to the following:

          Randall S. Susskind
          Cathleen I. Price
     Equal Justice Initiative of Alabama
          122 Commerce Street
          Montgomery, AL 36104
          cprice@eji.org
          rsusskind@eji.org

Vincent R. Fitzpatrick, Jr. (SDNY Bar No. VF2907)
Heather K. Mcdevitt (SDNY Bar No. HM9973)
Stephanie Cohen (SDNY Bar No. SM7006)
White & Case LLP
1155 Avenue of the Americas
New York, NY  10036
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
vfitzpatrick@whitecase.com
hmcdevitt@whitecase.com
stephcohen@whitecase.com


OF COUNSEL

**S/ James W. Davis**
James W. Davis  (DAV103)
Assistant Attorney General
office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 242-7300
(334) 353-8440 Fax
Email:  jimdavis@ago.state.al.us