IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIE MCNAIR, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:06-cv-00695-WKW |
| | ) | |
| RICHARD ALLEN, *et al.,* | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |
| _____ | | |
| JAMES CALLAHAN, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:06-cv-00919-WKW |
| | ) | |
| RICHARD ALLEN, *et al.,* | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |

**MEMORANDUM OPINION AND ORDER**

Willie McNair and James Callahan are death row inmates who have filed § 1983 challenges to Alabama's lethal injection protocol and its administration. Their cases were consolidated because of the similarity of the legal issues. Defendant Richard Allen is the Commissioner of Alabama's Department of Corrections, and Defendant Grantt Culliver is the Warden of Holman Correctional Facility ("Holman"), the prison at which executions are conducted in Alabama. Before the court are three dispositive motions filed by the defendants. For the reasons stated herein, these motions will be denied.

## I. BACKGROUND

**A.   *Willie McNair***

McNair is on Alabama's death row for the May 21, 1990 robbery and murder of an elderly widow, Mrs. Ella Foy Riley.[1]  His direct appeals in the state courts ended on February 21, 1995, when the United States Supreme Court denied McNair's petition for writ of certiorari.  *McNair v. Alabama*, 513 U.S. 1159 (1995).  On July 5, 1995, McNair initiated state court collateral proceedings, which ended unsuccessfully with the United States Supreme Court's April 6, 1998 denial of McNair's petition for writ of certiorari.  *McNair v. Alabama*, 523 U.S. 1064 (1998).  McNair then filed a petition for writ of habeas corpus in the United States District Court for the Middle District of Alabama on August 18, 1998. Although the district court granted his habeas petition in part, *McNair v. Campbell*, 307 F. Supp. 2d 1277 (M.D. Ala. 2004), the Eleventh Circuit Court of Appeals reversed the partial grant of habeas relief.  *McNair v. Campbell*, 416 F.3d 1291 (11th Cir. 2005).  The United States Supreme Court denied McNair's petition for writ of certiorari on April 17, 2006.  *McNair v. Allen*, 547 U.S. 1073 (2006).

**B.   *James Callahan***

Callahan is on Alabama's death row for the February 4, 1982 kidnapping, rape, and

---

[1] In its opinion reversing the grant of, and affirming the denial of, McNair's petition for habeas relief, the Eleventh Circuit Court of Appeals detailed the facts of his offense as found by the state trial court.  *See McNair v. Campbell*, 416 F.3d 1291 (11th Cir. 2005).

murder of Ms. Rebecca Suzanne Howell.[2] After the Alabama Supreme Court reversed Callahan's initial conviction on February 8, 1995, *Ex parte Callahan*, 471 So. 2d 463 (Ala. 1985), Callahan was again convicted for capital murder and sentenced to death in the Circuit Court of Calhoun County, Alabama, on November 7, 1987. The state appellate courts affirmed this conviction and sentence, and his direct appeals in the state courts ended on October 1, 1990, when the United States Supreme Court denied Callahan's petition for writ of certiorari. *Callahan v. Alabama*, 498 U.S. 881 (1990). Callahan's state court collateral proceedings also were not successful. On April 30, 1999, the Alabama Court of Criminal Appeals affirmed the trial court's denial of his petition for post-conviction relief, *Callahan v. State*, 767 So. 2d 380 (Ala. Crim. App. 1999), and the Alabama Supreme Court denied certiorari review. *Ex parte Callahan*, 767 So. 2d 405 (Ala. 2000). On March 29, 2001, Callahan filed a petition for writ of habeas corpus in the United States District Court for the Northern District of Alabama, which was initially granted on two grounds. *Callahan v. Haley*, 313 F. Supp. 2d 1252 (N.D. Ala. 2004). The Eleventh Circuit vacated without prejudice and remanded the case for consideration of all claims. *Callahan v. Campbell*, 396 F.3d 1287 (11th Cir. 2005). The district court again granted Callahan's habeas petition in part, but on October 5, 2005, the Eleventh Circuit reversed. *Callahan v. Campbell*, 427 F.3d 897 (11th Cir. 2005). A year later, the United States Supreme Court denied Callahan's

---

[2] In its opinion reversing the grant of, and affirming the denial of, Callahan's petition for habeas relief, the Eleventh Circuit Court of Appeals detailed the facts of his offense as found by the state trial court. *See Callahan v. Campbell*, 427 F.3d 897 (11th Cir. 2005).

petition for writ of certiorari. *Callahan v. Allen*, __ U.S. __ , 127 S. Ct. 427 (2006).

## C.     *Intervening Legal Events*

During the course of McNair's and Callahan's federal habeas proceedings, three events bearing on this case occurred. On July 1, 2002, the Alabama law establishing lethal injection as the primary form of execution became effective. Ala. Code § 15-18-82.1. This statute provided death row inmates thirty days to elect death by electrocution. *Id.* In the absence of such election, lethal injection became the default method.

On May 24, 2004, the United States Supreme Court ruled that § 1983 is an appropriate vehicle for a death row inmate to challenge Alabama's proposed use of a "cut-down" procedure to access his veins during the lethal injection procedure. *Nelson v. Campbell*, 541 U.S. 637 (2004). Such a claim, along with a temporary stay of execution, was not deemed a challenge to the validity of the death sentence sounding in habeas. *Id.* at 647-48. On June 12, 2006, the United States Supreme Court again ruled that a death row inmate's challenge to lethal injection may proceed as an action for relief under § 1983. *Hill v. McDonough*, __ U.S. __ , 126 S. Ct. 2096 (2006). The Court emphasized that the filing of a § 1983 action does not entitle the plaintiff to an automatic stay of execution. *Id.* at 2104.

## D.     *Procedural History*

McNair filed the instant § 1983 action challenging Alabama's lethal injection protocol on August 7, 2006, approximately four months after his federal habeas proceedings ended. He claims that the state's execution method and procedure pose an unjustifiable risk of

causing him extreme pain in violation of the Eighth and Fourteenth Amendments to the United States Constitution. Callahan filed a similar § 1983 action challenging Alabama's lethal injection protocol on October 11, 2006, the day after the Supreme Court denied his petition for writ of certiorari. On November 27, 2006, the court entered an order (Doc. # 26) consolidating McNair's and Callahan's actions.

At the end of November 2006, upon receipt of the parties' Rule 26(f) Report, in which the parties agreed *inter alia* to a bench trial date of June 25, 2007, the court entered a scheduling order (Doc. # 27) setting the trial on the proposed date. On March 1, 2007, the plaintiffs requested additional time for discovery (Doc. # 38) due to early discovery disputes. The defendants were not opposed to an extension. Therefore, the court entered an amended scheduling order (Doc. # 41), which continued all dates and deadlines by approximately three months. The Amended Scheduling Order set the trial in this matter on October 2, 2007. (*Id.*) Thereafter, due to the defendants' expert's scheduling conflict, the court continued the trial to October 3, 2007. (Doc. # 93.)

The intended trial schedule was interrupted by events largely outside the case. On September 25, 2007, the court conducted a routine status conference in anticipation of trial. Final trial details and the court's impending visit to view the death chamber at Holman were discussed. The parties also participated in mediation with the Magistrate Judge. During the course of the day, the defendants informed the court and opposing counsel that the State was contemplating changes to the lethal injection protocol. On the same date, the United States

5

Supreme Court granted certiorari in *Baze v. Rees*, __ U.S.__, 128 S. Ct. 34 (2007). Two days later, on September 27, Governor Bob Riley granted a forty-five day reprieve to another condemned prisoner "to allow the Alabama Department of Corrections sufficient time to make modifications to its lethal injection protocol." (Doc. # 124-2.) Because the precise protocol under which the defendants proposed to execute the plaintiffs was not known, the court had no alternative but to continue the trial even though the case was ready. Neither side consented to the continuance.

Not only were all participants ready for trial on October 3, but the court had also finalized this opinion ruling on pending dispositive motions. In anticipation of supplemental briefs following the deposition of experts, the court had not yet filed the opinion. The defendants had filed a Motion for Judgment on the Pleadings and Alternative Motion for Summary Judgment Regarding Statute of Limitations[3] (Doc. # 43) on March 14, 2007, and a Motion for Summary Dismissal Based on the Doctrine of Laches (Doc. # 53) on April 24, 2007. On August 16, 2007, before the completion of discovery, the defendants filed a Motion for Summary Judgment (Doc. # 80) on the merits. After the depositions of the parties' experts were taken, the parties supplemented their summary judgment briefing on September 27, 2007. (Docs. # 125 & # 126.)

As of the date of the continuance, neither plaintiff had an execution date. This is despite the State's request for execution dates to the Alabama Supreme Court, which had

---

[3] Defendants moved for summary judgment in the alternative. Because the court will consider matters outside the pleadings, the defendants' motion for judgment on the pleadings will be denied.

been pending since May 2007. However, on November 1, 2007, the defendants filed notice that the Alabama Supreme Court set Callahan's execution date for January 31, 2008. As of the date of this writing, no execution date has been set for McNair.

## II. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both.

## III. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## IV. DISCUSSION

Justifiably, the federal courts in Alabama have dismissed § 1983 method-of-execution cases that were filed too late for full adjudication without the need for a stay. *See, e.g., Jones v. Allen*, 485 F.3d 635, 639 n.2 (11th Cir.), *cert. denied*, __ U.S.__, 127 S. Ct. 2160 (2007).

Although similar in many respects to other § 1983 method-of-execution cases the courts of this district have decided recently, this case was distinguishable, as the October trial date approached, in one very important way.[4] Despite the State's request filed in May, execution dates for McNair and Callahan had not been scheduled.[5] This means that the "strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay," *Nelson*, 541 U.S. at 650, did not come into play because the case could be tried without the necessity of a stay or an expedited litigation schedule. Thus, in deciding the defendants' dispositive motions, this case was in a unique posture, *i.e.*, no execution was set, discovery was complete, and the trial was imminent. Due to events beyond the control of the plaintiffs, the circumstances have changed in a number of respects. As will be seen, the changed circumstances do not affect the outcome of pending dispositive motions.[6]

The defendants have asserted the affirmative defenses of statute of limitations and

---

[4] In each of these cases, execution dates had been set before a trial date could be reached. *See Siebert v. Allen*, No. 2:07-cv-295, 2007 WL 3047086, at *1 (M.D. Ala. Oct. 17, 2007), *aff'd in part, rev'd in part*, __ F.3d .__, 2007 WL 3244633 (11th Cir. Nov. 5, 2007); *Arthur v. Allen*, No. 07-0342, 2007 WL 2320069, at *1 (S.D. Ala. Aug. 10, 2007); *Williams v. Allen*, No. 2:07-cv-307, 2007 WL 2206846, at *2 (M.D. Ala. July 31, 2007), *aff'd*, 496 F.3d 1210 (11th Cir. 2007); *Grayson v. Allen*, 499 F. Supp. 2d 1228, 1233 (M.D. Ala.), *aff'd*, 491 F.3d 1318 (11th Cir.), *cert. denied*, __ U.S.__, 128 S. Ct. 6 (2007); *Jones v. Allen*, 483 F. Supp. 2d 1142, 1144 (M.D. Ala.), *aff'd*, 485 F.3d 635 (11th Cir.), *cert. denied*, __ U.S.__, 127 S. Ct. 2160 (2007). *But see Hallford v. Allen*, No. 07-0401, 2007 WL 2683672 (S.D. Ala. Sept. 6, 2007).

[5] This circumstance—the delay in setting an execution date—was a departure from the recognized practice of the Alabama Supreme Court in recent executions.

[6] The court recognizes that some follow-up discovery is reasonably necessary in view of the change in the protocol. However, due to the apparently minor nature of the change, it has no effect on the analysis of the dispositive motions—an analysis already reached before the protocol change.

laches and also seek judgment as a matter of law on the merits. The court first addresses the statute of limitations argument.

### A. *Statute of Limitations*

Defendants have argued in each of the method-of-execution cases filed in Alabama, as they do here, that the case should be dismissed because the plaintiffs' complaints were untimely filed under the relevant limitations period. In their initial motion, the defendants relied on the reasoning of the Sixth Circuit Court of Appeals in *Cooey v. Strickland*, 479 F.3d 412 (6th Cir. 2007). In *Cooey*, a split panel of the Sixth Circuit held that the limitations period on a § 1983 method-of-execution claim begins to run upon either the conclusion of direct review of the conviction and sentence or the date on which the state adopted the complained-of execution method, whichever is later. *Id.* at 422. Under this rationale, McNair's and Callahan's claims should have been brought no later than July 31, 2004. The defendants conclude that the claims, which were not filed until 2006, are thus time-barred.

In a previous method-of-execution case, this court rejected *Cooey*'s rationale and adopted the reasoning of the district court in *Jones*. *See Grayson*, 499 F. Supp. 2d at 1235. The district court in *Jones* denied the defendants' motion for summary judgment based on statute of limitations grounds. *Jones*, 483 F. Supp. 2d at 1153 (Thompson, J.). Judge Thompson reasoned that Jones's § 1983 claim was not time-barred because the essence of Jones's complaint was to prevent an allegedly unconstitutional act (*i.e.*, state mandated lethal injection) from occurring in the future. As such, a statute of limitations cannot attach to an

act that has yet to occur and a tort that is not yet complete. The Eleventh Circuit has not considered the statute of limitations argument on appeal.[7] *See Williams v. Allen*, 496 F.3d 1215 (11th Cir. 2007); *Grayson v. Allen*, 491 F.3d 1318, 1326 n.5 (11th Cir.), *cert. denied*, __ U.S.__, 128 S. Ct. 6 (2007); *Jones*, 485 F.3d at 638 n.1.

The defendants' expanded statute of limitations argument in their most recent summary judgment motion does not compel the court to alter its previous rejection of the *Cooey* reasoning. The court again adopts Judge Thompson's reasoning in *Jones*. Therefore, the motions for summary judgment with respect to the defense of statute of limitations are due to be denied.

**B.    Laches**

The defendants originally raised the defense of laches (Defs.' Mot. Summ. Dismissal), but they most recently argued that the "plaintiffs' claims are time-barred on equitable grounds." (Defs.' Br. Summ. J. 25.) Defendants now assert that they need only show that the plaintiffs inexcusably delayed in bringing their claims; that is, "prejudice to the defendants is not a necessary element." (*Id.* at 26.) Inexcusable delay, standing alone, impermissibly short-circuits laches as a defense or bar to a cause of action. It is, however, an appropriate equitable consideration when weighing a motion to stay execution, which is

---

[7] Nor is the issue reached in some of the district court cases. *See Siebert*, 2007 WL 2903009; *Hallford*, 2007 WL 2683672, at *2 n.6; *Arthur*, 2007 WL 2320069, at *1; *Williams*, 2007 WL 2206846, at *6.

not now before the court.[8]

In *Grayson*, this court found that the § 1983 claim was barred by laches (delay that was inexcusable and prejudicial to the defendants),[9] and alternatively, that while a stay would be necessary to fully adjudicate the claim, it was not justified on equitable considerations. The Eleventh Circuit acknowledged both the dismissal of the cause of action on laches grounds and the denial of a stay of execution on equitable grounds, *Grayson*, 491 F.3d at 1321 (stating that "the district court determined that Grayson was not entitled to [a stay] and dismissed Grayson's claim under the doctrine of laches"), and specifically affirmed the lower court on equitable grounds. *Id*. at 1326 nn.4,5. Without analyzing laches, the appellate court focused on Grayson's inexcusable delay in bringing his claim: "If Grayson truly had intended to challenge Alabama's lethal injection protocol, he would not have deliberately waited to

---

[8] The court here makes a distinction between laches as a bar to a cause of action, two elements of which include (1) delay that is (2) inexcusable, and inexcusable delay as a defense to a motion to stay execution. The former— laches as a bar or defense—is at issue here. The court notes that imprecise use of "excusable delay" in this line of cases has resulted in blurring the doctrine of laches. This is because inexcusable delay comprises not only two elements of laches, but it has also been used, sometimes alone and other times in conjunction with undue prejudice, likelihood of success on the merits, and general equitable principles, as a defense to a motion to stay execution. Inexcusable delay triggers the strong equitable presumption against the grant of a stay where the claim could have been brought in time to allow consideration of the merits without entry of a stay. Nevertheless, a stay is not presently before the court; the underlying § 1983 cause of action is, and the court addresses the timeliness of its filing under the traditional doctrine of laches. *See Venus Lines Agency, Inc., v. CVG Int'l Am.*, 234 F.3d 1225, 1230 (11th Cir. 2000).

[9] Laches is an equitable defense, a consideration separate from a statute of limitations and dependent on the facts of each case. *Horton v. Kimbrell*, 819 So. 2d 601, 606 (Ala. 2001); *Merrill v. Merrill*, 71 So. 2d 44, 46 (Ala. 1954); *Woods v. Sanders*, 25 So. 2d 141, 144 (Ala. 1946) ("Laches is not fixed by a hard and fast limit of time, but is a principle of good conscience dependent on the facts of each case."). If inequity would result from permitting a delayed claim to be enforced, laches applies, even if the claim is not yet barred by the statute of limitations. *Gayle v. Pennington*, 64 So. 572, 577 (Ala. 1914). The application of the doctrine of laches is within the sound discretion of the trial court. *See Horton*, 819 So. 2d at 606.

file suit until a decision on the merits would be impossible without entry of a stay or an expedited litigation schedule." *Id*. at 1326. Grayson filed his § 1983 challenge two months before the State asked for an execution date (his second), five months before the date was set, and eight months before his execution. Because Grayson had just litigated another § 1983 action without raising a challenge to the method of execution (in which he avoided his first execution date), the Eleventh Circuit affirmed the district court's determination that Grayson's delay was inexcusable and prejudicial, having left insufficient time to fully litigate the issues without the entry of a stay.

No such delay occurred in this case.[10] A decision on the merits was possible, in fact was assured, without entry of a stay or an expedited litigation schedule. The parties enjoyed a moderately-paced litigation track, not unlike many other civil cases in this district, until a week before the scheduled trial. And, it does not go unnoticed that the defendants agreed to extensions of time throughout the course of this litigation. In short, the cases were not filed too late "to ascertain the merits of the controversy." *Ex parte Grubbs*, 542 So. 2d 927, 929 (Ala. 1989). But for intervening events beyond the control of the plaintiffs, this case would have been tried in early October and resolved by the court shortly thereafter. Unlike Grayson and others, McNair and Callahan did not unnecessarily delay in bringing their actions, and

---

[10] McNair filed more than nine months before the State requested an execution date. Callahan filed his action seven months before the State requested his execution date. The lack of execution dates going into the scheduled trial materially distinguishes this case from the prior cases in this district. *See supra* note 4.

12

the recent setting of Callahan's execution date does not change this conclusion.[11]

Assuming for the sake of argument that the plaintiffs unduly tarried in bringing their actions, laches requires something more than inexcusable delay. To establish the affirmative defense of laches, the defendants must show not only that the plaintiffs inexcusably delayed in asserting their claims, but also that the delay caused undue prejudice to the defendants. *Ex parte Lightwave Techs., L.L.C.*, __ So. 2d. __ , No. 1050996, 2007 WL 1229206, at *8 (Ala. Apr. 27, 2007).[12] The defendants have not carried their burden of demonstrating that the delay caused them undue prejudice. Therefore, the defense of laches must fail.

Courts have found undue prejudice takes many forms. "[T]o bar an action, laches requires either delay with notice of the existence of a right that results in a disadvantage to another, or delay which effects a change in circumstances such that the controversy cannot be determined with reasonable accuracy." *See Jones v. Braggs*, 637 So. 2d 1356, 1359 (Ala. Ct. App. 1994).[13] Although the classic characteristics of undue prejudice, including the

---

[11] The execution date was set one month after the trial was due to be commenced.

[12] In their motion for summary dismissal based on laches, the defendants cite an Eleventh Circuit case for the elements of laches. *See Kason Indus., Inc. v. Component Hardware Group, Inc.*, 120 F.3d 1199, 1203 (11th Cir. 1997) (analyzing laches defense, which includes a look at analogous statute of limitations under Georgia law, in a trade dress infringement claim under the Lanham Act). A federal district court must apply state substantive law in non-diversity cases in the absence of a compelling federal interest. *See* 19 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4520 (2d ed. 1996); *see also Osman v. Hialeah Hous. Auth.*, 785 F.2d 1550, 1550-51 (11th Cir. 1986) (referencing state law in order to determine the existence of a property interest in § 1983 claim). In the absence of any compelling federal interest, Alabama law applies here. Even if Eleventh Circuit law applied here, the laches analysis would remain the same. *See Venus*, 234 F.3d at 1230.

[13] This "reasonable accuracy" standard has evolved over the course of laches jurisprudence—from "safe determination," *Davis v. Thomaston*, 420 So.2d 82, 84 (Ala. 1982), which evolved from "difficult, if not [impossible] to do justice," *Woods*, 25 So. 2d at 144, which evolved from "at best . . .

unavailability of witnesses, changed personnel, and loss of evidence, *Grubbs*, 542 So. 2d at 929, are not in play here, laches may still come into operation "if the court believes that, under the circumstances, it is too late to ascertain the merits of the controversy." *Id.* (citing *Meeks v. Meeks*, 37 So. 2d 914 (Ala. 1948)). Furthermore, "[m]aterial prejudice resulting from the delay is essential." *Commercial Union Ins. Co. v. SEPCO Corp.*, 300 F. Supp. 2d 1198, 1208 (N.D. Ala. 2004).

The defendants claim undue prejudice because "the State, and the victims of crime, must wait to enforce the State's judgment." (Defs.' Br. Summ. J. 28.) The court acknowledges the State's strong interest in enforcing its criminal judgments. *See Calderon v. Thompson*, 523 U.S. 538, 556 (1998) ("To unsettle these expectations is to inflict a profound injury to the powerful and legitimate interest in punishing the guilty, an interest shared by the State and the victims of crime alike." (internal citation and quotation marks omitted)); *Grayson*, 491 F.3d at 1326. But where no execution dates were set prior to the scheduled trial date, there would be no delay in enforcing the State's judgment that would be chargeable to the plaintiffs. The court cannot construe the State's delay in setting execution dates as prejudicial to the State's own interest and then charge such delays against the plaintiffs. Delay at the hands of the Alabama Supreme Court might indeed be construed as beneficial to the interests of the State in allowing—for the first time—an orderly consideration of the lethal injection protocol.

---

conjectural." *Rives v. Morris*, 18 So. 743, 744 (Ala. 1895).

In other cases where the execution dates had been set, including *Grayson*, the courts could be confident that full adjudication on the merits could not be achieved before the execution date. The defendants would have suffered an undue burden in those cases because full adjudication necessarily required either expedited litigation or a stay of execution. But here, no such burden existed as the trial approached. Neither the nature of this defense nor the nature of the claim excuses the defendants from having to litigate this case because they have not demonstrated material prejudice. This is not to say that future plaintiffs who have delayed in bringing similar claims will get the opportunity to try their cases. Future plaintiffs continue to run the severe risk of facing an imminent execution and the strong presumption against a stay of execution.

The court has fully weighed the unique circumstances of this case and finds that laches does not bar McNair and Callahan from prosecuting this action. The November 1, 2007 notice of an execution date for Callahan, coming a month after the scheduled trial date, does not affect this conclusion. Therefore, the motions for summary judgment with respect to laches are due to be denied.

C.   *Summary Judgment on the Merits*

The evidence submitted in support of and in opposition to the defendant's motion for summary judgment includes deposition testimony from each witness expected to be called at the bench trial of this matter, as well as much of the documentary evidence the parties intend to introduce at trial. From a careful and thorough review of the record, the court

concludes that, when the evidence is viewed in a light most favorable to the plaintiffs, several issues of material fact are disputed.[14] Moreover, it is the opinion of the court that this case presents vitally important issues that may hinge on the credibility of witnesses such that, even if there were no factual disputes, the better course of action would be to deny summary judgment and to proceed to a full trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("[Rule 56] by no means authorizes trial on affidavits. Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are [trial] functions . . . [and summary judgment may be denied] in a case where there is reason to believe that the better course would be to proceed to a full trial."); *Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285 (11th Cir. 2001). Accordingly, the motion for summary judgment will be denied.

## V. CONCLUSION

For the foregoing reasons, it is ORDERED that:

1.     The Motion for Judgment on the Pleadings and Alternative Motion for

---

[14] In additional to the effects of the protocol modification, some of those issues are the sufficiency of the monitoring of the inmate and the intravenous ("IV") drug delivery system during the execution procedure, and the present nature and extent of such monitoring; whether the three-drug protocol, in light of the existence of alternatives, is constitutional; and whether constitutional considerations require better screening, training, and credentialing of the members of the execution team. Moreover, the respective experts are unable to agree on so basic a concept as a working definition of "consciousness" and further dispute many basic points of the protocol and its alternatives, including the degree of the risk of pain. The court intends to closely assess the credibility of each expert. Because the written protocol is integral, and therefore material, to all of these issues, it is clearly implicated in each factual dispute. Finally, the court will inspect the death chamber prior to trial because material issues of fact exist as to the appropriate location of execution team members during the procedure, the length and location of IV lines, the size of the observation window, and the location of equipment and supplies.

Summary Judgment Regarding Statute of Limitations (Doc. # 43) is DENIED;

    2.       The Motion for Summary Dismissal Based on the Doctrine of Laches (Doc. # 53) is DENIED; and

    3.       The Motion for Summary Judgment (Doc. # 80) is DENIED.

DONE this 16th day of November, 2007.

                                        /s/ W. Keith Watkins
                                  UNITED STATES DISTRICT JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

**1.** **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

   (a) **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

   (b) **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

   (c) **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

   (d) **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

   (e) **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

Rev.: 4/04

2. **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

   (a) **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

   (b) **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

   (c) **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

   (d) **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

   (e) **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3. **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4. **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).