IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIE MCNAIR, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | Case No. 2:06-cv-695-WKW |
| | ) | |
| RICHARD ALLEN, et al., | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |
| _____ | ) | |
| | ) | |
| JAMES CALLAHAN, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | Case No. 2:06-cv-919-WKW |
| | ) | |
| RICHARD ALLEN, et al., | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiff James Callahan's Motion for Stay of Execution (Doc. # 147). The motion was precipitated by the Alabama Supreme Court's October 31, 2007 order setting Callahan's execution date. If the motion is not granted, Callahan will be executed by the State of Alabama on January 31, 2008. For the reasons stated herein, the motion is due to be granted.

## I. PROCEDURAL HISTORY

Although the November 16, 2007 opinion (Doc. # 146) outlines the procedural history of this case, some of the relevant dates are highlighted here. The trial in this matter was

scheduled to begin on October 3, 2007. Eight days before the trial date, on September 25, 2007, defense counsel announced that the defendants would be making changes to the State's execution protocol - the constitutionality of which comprises the subject matter of this litigation. On the same date, the United States Supreme Court granted certiorari in the *Baze* case. *Baze v. Rees*, __ U.S.__, 128 S. Ct. 34 (2007).[1] On September 27, 2007, Governor Bob Riley granted a forty-five day reprieve to another condemned prisoner "to allow the Alabama Department of Corrections sufficient time to make modifications to its lethal injection protocol." (Doc. # 124-2.)

The parties were ready for trial, but on September 28, 2007, the court was compelled to continue the case. (Doc. # 130.) A new trial date was tentatively set because it was not known when the State would complete the modification to its protocol, whether the plaintiffs would agree that the modification alleviated any constitutional violation, and, frankly, what effect the grant of certiorari in *Baze* would or should have on pending challenges to lethal injection.

On October 26, 2007, the defendants filed a revised lethal injection protocol. Five days later, on October 31, 2007, the Alabama Supreme Court set Callahan's execution date for January 31, 2008. After holding a status conference with the parties, the trial was continued generally in anticipation of additional limited discovery and the filing of the instant

---

[1] The questions presented in *Baze* include the correct standard by which the constitutionality of methods of execution should be adjudged and whether Kentucky's three-drug protocol, which is similar to Alabama's lethal injection protocol at issue here, violates that standard.

motion.  The motion is fully briefed and ripe for adjudication.

## II.  LEGAL STANDARD

The grant or denial of a stay or preliminary injunction is within the discretion of the district court.  *Canal Auth. of State of Fla. v. Callaway,* 489 F.2d 567 (5th Cir. 1974).[2]  In deciding whether to grant a stay of execution, courts analyze the familiar four factors involved in injunctive relief consideration:

> (1) whether there is a substantial likelihood of success on the merits; (2) whether the requested action is necessary to prevent irreparable injury; (3) whether the threatened injury outweighs the harm the stay or injunction would inflict upon the non-movant; and (4) whether the requested action would serve the public interest.

*Rutherford v. McDonough*, 466 F.3d 970, 979 (11th Cir. 2006) (*Rutherford II*) (Wilson, J., dissenting); *see also Hill v. McDonough*, __ U.S. __, 126 S. Ct. 2096, 2104 (2006) ("[L]ike other stay applications, inmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits."); Fed. R. Civ. P. 65.  In evaluating the harm that a stay would inflict upon the defendants, courts must consider whether the plaintiff unnecessarily delayed in bringing the claim.  *See Nelson v. Campbell*, 541 U.S. 637, 649-50 (2006).  The movant must clearly carry the burden of persuasion in order for the court to apply the remedy.  *See Hill*, 126 S. Ct. at 2104; *Callaway,* 489 F.2d at 573.

---

[2]  The Eleventh Circuit has adopted all prior decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, as binding precedent.  *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

3

## III. ANALYSIS

This case is unusual in the stay-of-execution context.  It has been pending for over a year, and the court has determined that the plaintiffs did not unreasonably delay in bringing suit.[3]  (Doc. # 146, at 8.)  The court and the parties were ready for the trial that was scheduled to begin on October 3, 2007.  Callahan has only recently received an execution date; McNair's execution date has not been set.  A stay of execution is an "extraordinary and drastic remedy," but its "primary justification . . . is to preserve the court's ability to render a meaningful decision on the merits."  *Callaway*, 489 F.2d at 573.  Indeed, in timely-filed challenges to the lethal injection protocol, it has been this court's primary concern that resolution of questions of such moral magnitude proceed in a deliberate and orderly fashion in order to reach a meaningful decision on the merits.  The higher courts have cautioned against allowing speculative and untimely method-of-execution suits; however, this one is neither speculative nor untimely.

Callahan urges the court to follow the United States Supreme Court's lead in staying the case pending the opinion in *Baze*, whereas the defendants insist that the Eleventh Circuit's *Schwab* opinion[4] requires the court to ignore the implications and aftermath of the Supreme Court's grant of certiorari in *Baze*.  The grant of certiorari does not mandate a stay

---

[3]  Thus, the strong equitable presumption against a stay does not come into play here where the claim was brought with sufficient time to allow consideration of the merits without requiring the entry of a stay.  *Cf. Nelson*, 541 U.S. at 650.

[4]  *Schwab v. Sec'y, Dep't of Corrections*, __ F.3d __, No. 07-15329, 2007 WL 3375242 (11th Cir. Nov. 15, 2007).

in similar cases and "does not suggest a view on the merits," *Schwab*, 2007 WL 3375242, at *1, *3, but neither does *Schwab* require a denial of stay of execution.[5]  The Eleventh Circuit did not venture a guess at the Supreme Court's motivation for staying *Baze*-type cases, *id*. at *3, but the Supreme Court's motivation may have something to do with protecting the status quo until it can render meaningful decisions on the merits of those cases. At bottom, any decision on the merits made by this court - whether it be a pre-trial assessment of the likelihood of success on the merits or the ultimate ruling after full trial - may not be meaningful without the benefit of the Supreme Court's ruling in *Baze*. Nevertheless, the court is charged with assessing the likelihood of success on the merits, and this it will do.

**A.    *Likelihood of Success on the Merits***

Assessing the likelihood of success on the merits is problematic in light of the current national debate in the courts over a standard by which the constitutionality of three-drug protocols should be adjudged.  The parties are at odds with the respect to the proper standard.

---

[5]  This is particularly true where this case is distinguishable from *Schwab*.  Callahan's motion is not an emergency filing; Callahan has not had the benefit of extensive state court hearings establishing a factual record; Callahan did not wait until two days before his execution to file his case; Callahan's claim is not barred by laches; and the Alabama protocol is different than Florida's in several material respects.

Even if the facts of this case were more similar to those in *Schwab*, the Eleventh Circuit vacated the stay of execution entered by the trial court in *Schwab* because it was "simply wrong" to grant a stay *solely* on the basis of the grant of certiorari in *Baze*.  *Schwab*, 2007 WL 3375242, at *1.  In the instant case, a stay of execution is warranted because Callahan has carried his burden of persuasion on the motion for a stay.  It does not go unnoticed, though, that the Supreme Court granted stays of execution to Schwab and, more recently, to Thomas Arthur, pending decisions on those petitions for writ of certiorari.  *See Arthur v. Allen*, __ U.S. __, No. 07-395, 2007 WL 4248619 (Dec. 5, 2007) (mem.); *Schwab v. Florida*, __ U.S. __, No. 07A383, 2007 WL 3380059 (Nov. 15, 2007) (mem.).

Callahan argues that the applicable standard in a method-of-execution challenge is a purely objective one. Defendants argue that the plaintiffs must show proof of a sufficiently culpable state of mind. There is no clear precedent, but the standard is clearly at issue in *Baze*.

The court concludes that there is a substantial likelihood of success on the merits.[6] Meeting the likelihood of success criterion necessarily involves stating a legitimate claim. *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1226 (11th Cir. 2005) (affirming district court's determination that plaintiffs could not establish a substantial likelihood of success on the merits because they did not state a claim) (citing *Grupo Mexicano de Desarrollo v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 339 (1990) ("Plaintiffs with questionable claims would not meet the likelihood of success criterion.")). The parties do not debate the amount of proof necessary to satisfy this requirement, and it is clear that "the district court need not find that the evidence positively guarantees a final verdict in plaintiff's favor." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995). The finding of a likelihood of success on the merits is partially grounded in the claim's

---

[6] By stating there is a "substantial likelihood," the court also means there is a "significant possibility" of success on the merits. Although the requirement of "likelihood" of success on the merits has been cast in terms of "substantial likelihood" and "significant possibility," the Eleventh Circuit has recognized that such qualifiers do not alter the quantum of proof necessary to satisfy this requirement. *See Shatel Corp. v. Mao Ta Lumber & Yacht Corp.*, 697 F.2d 1352, 1356 n.2 (11th Cir. 1983). Moreover, "significant possibility" is a relatively new phrase that the United States Supreme Court used in *Hill* - but in a different context; by citing to *Barefoot v. Estelle*, 463 U.S. 880, 895-896 (1983), the Court made clear that it was setting the standard for a stay of execution pending the filing and consideration of a petition for a writ of certiorari from the Supreme Court to the Courts of Appeal. *See Hill*, 126 S. Ct. at 2104.

survival of summary judgment.[7]  While the existence of genuine issues of material fact does not guarantee ultimate success on the merits and the amount of contested evidence required to reach the likelihood of success threshold cannot be readily quantified, surviving summary judgment is confirmation that there is indeed a likelihood of success on the merits and that Callahan's claims are not merely questionable.

Other courts have employed a wide range of standards in evaluating the constitutionality of lethal injection protocols.  If the court were to apply the most restrictive of those standards, Callahan would have difficulty demonstrating a substantial likelihood of success on the merits.  The application of other less restrictive standards, however, would likely result in a finding that one or more aspects of the Alabama protocol are unconstitutional (yet reparable).  The court need not default to the most restrictive standard where a substantial likelihood of success on the merits exists under some reasonable standard.  Under the "unnecessary risk of pain" standard referred to, but not analyzed or expressly adopted, in *Schwab*,[8] there is a substantial likelihood of success on the merits. There is substantial but disputed evidence that Alabama's protocol contains constitutional deficiencies in the monitoring of the procedure, the training of certain participants, and the

---

[7]  In its memorandum opinion and order dated November 16, 2007, the court denied the defendants' motion for summary judgment because "several issues of material fact are disputed" and "this case presents vitally important issues that may hinge on the credibility of witnesses such that, even if there were no factual disputes, the better course of action would be to proceed to a full trial."  (Doc. # 146.)

[8]  *Schwab*, 2007 WL 3375242, at *2 ("The evidence that . . . Schwab rel[ies] on does not show that those procedures, protocols, and drugs pose an unnecessary risk of pain.").

use of potentially unconstitutionally painful drugs.[9]   The court will assess carefully the evidence and credibility of the witnesses to resolve these and other salient issues.

Furthermore, it is notable that three-drug lethal injection protocols similar to Alabama's have been found to be unconstitutional by at least two other trial courts.[10]   Not so dissimilarly, one of the protocols that survived constitutional review, Florida's protocol at issue in *Schwab*, did so after having been revamped as a result of public and scientific comment, culminating in features not found in Alabama's protocol.[11]   Of course, an evaluation of the constitutionality of this protocol, its components, and its administration will be fact-intensive, specific to Alabama, and has not yet been decided by any court.  In light of these circumstances, the court concludes that there is a substantial likelihood of success on the merits under at least one reasonable standard.

---

[9]   From a careful review of the evidence submitted at the summary judgment stage, including the depositions of those involved in Alabama executions, the issues associated with the second and third drugs administered per the protocol, *i.e.*, pancuronium bromide (Pavulon) and potassium chloride, have risen to constitutional proportions.  It is evident that the current nationwide challenge to the three-drug protocol is derived wholly from the use of these two drugs.  Absent the use of Pavulon and potassium chloride, Callahan may not have been able to demonstrate a substantial likelihood of success on the merits under any standard.  A one-drug protocol has been the subject of much debate and is a key consideration in the assessment of the constitutionality of Alabama's existing protocol.

[10]   *See Harbison v. Little*, 511 F. Supp. 2d 872 (M.D. Tenn. 2007) (holding that Tennessee's lethal injection protocol violated Eighth Amendment); *Morales v. Tilton*, 465 F. Supp. 2d 972 (N.D. Cal. 2006) (holding that California's protocol, as implemented, resulted in an Eighth Amendment violation).

[11]   *See Lightbourne v. McCollum*, __So. 2d __, No. SC06-2391, 2007 WL 3196533, at *23 (Fla. Nov. 1, 2007) (holding that Florida's lethal injection procedures, as actually administered, are not constitutionally defective); *Schwab v. State*, __ So. 2d __, No. SC07-1603, 2007 WL 3196523 (Fla. Nov. 1, 2007) (rejecting the conclusion that lethal injection in Florida is unconstitutional, given the analysis in *Lightbourne*).

**B.    *Balancing the Harms***

The remaining criteria of the stay analysis require the court to weigh the competing harms. Because of the nature of the case, a possibility of success on the merits also points to irreparable injury without a stay. That is, an unconstitutional execution would impair the court's ability to grant an effective remedy. Undoubtedly, the State has a strong interest in the timely enforcement of a criminal sentence. *Hill*, 126 S. Ct. at 2104. However, the State itself jeopardized the timely enforcement of the sentence by delaying for seven months its request for Callahan's execution date and another five months in setting it.[12] Moreover, the effect of a stay on the public interest cuts both ways - the public has an interest both in the carrying out of death sentences in a constitutional manner and in the finality of criminal judgments. But because the defendants would not claim a legitimate interest in an unconstitutional execution, the public interest will be better served by a resolution of the constitutional challenge. In balancing these harms, the court finds that threatened irreparable injury to Callahan outweighs the harm a stay of execution would work on the defendants or the public interest.

## IV. CONCLUSION

Because, presumably, the United States Supreme Court will announce the proper

---

[12] *See* Doc. # 146 ("The court cannot construe the State's delay in setting execution dates as prejudicial to the State's own interest and then charge such delays against the plaintiffs. Delay at the hands of the Alabama Supreme Court might indeed be construed as beneficial to the interests of the State in allowing - for the first time - an orderly consideration of the lethal injection protocol."). Moreover, the setting of Callahan's execution date at such a late date in this litigation could be construed as interference with this court's jurisdiction. Under the circumstances of this case, the All Writs Act, 28 U.S.C. § 1651(a), grants this court additional authority to stay the execution pending a trial on the merits.

standard or standards shortly, the court is reluctant to try this case on an assumed standard. There is a significant likelihood that such action would be a waste of judicial resources and those of the parties, would result in a retrial, and would further delay the enforcement of Alabama's criminal judgments.[13]  Any decision on the merits would be in doubt pending a ruling in *Baze*.  For this reason, and because Callahan has carried his burden of persuasion, a stay must be granted in order for the court to reach a meaningful resolution of the issues.

Accordingly, it is ORDERED that Callahan's Motion for Stay of Execution (Doc. # 147) is GRANTED.  Callahan's execution date is hereby STAYED pending a trial on the merits to be scheduled by further order of the court.

DONE this 14th day of December, 2007.

        /s/   W.  Keith Watkins
        UNITED STATES DISTRICT JUDGE

---

[13]  A district court retains the inherent authority to manage its own docket.  *See Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1172 n.7 (11th Cir. 2004).

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

1.  **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

    (a)  **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

    (b)  **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

    (c)  **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

    (d)  **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

    (e)  **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

    *Rev.: 4/04*

2.    **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. <u>Rinaldo v. Corbett</u>, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

(a)    **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

(b)    **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

(c)    **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

(d)    **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

(e)    **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.    **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. <u>See</u> also Fed.R.App.P. 3(c). A <u>pro se</u> notice of appeal must be signed by the appellant.

4.    **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).