[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF
APPEALS
ELEVENTH CIRCUIT
Jan. 29, 2008

_____

No. 08-10100

_____

D. C. Docket Nos.  06-cv-695-WKW
06-cv-919-WKW

WILLIE MCNAIR,

Plaintiff-Counter-Defendant,

JAMES CALLAHAN,

Plaintiff-Counter-Defendant-
Appellee,

versus

RICHARD ALLEN, Commissioner,
Alabama Department of Corrections, individually
and in his official capacity,
GRANTT CULLIVER, Warden, Holman Correctional
Facility, in his individual and official capacity,

Defendants-Counter-Claimants-
Appellants.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(January 29, 2008)

Before TJOFLAT, BLACK and WILSON, Circuit Judges.

BLACK, Circuit Judge:

James Callahan is an Alabama death row inmate scheduled for execution on January 31, 2008. On October 11, 2006, Callahan filed an action under 42 U.S.C. § 1983, contending the method of execution chosen by the State of Alabama constitutes cruel and unusual punishment in violation of the Eighth Amendment. Finding Callahan's case had a significant possibility of succeeding on its merits, the district court entered a stay of execution on December 14, 2007, in order to permit Callahan to fully litigate his constitutional challenge. On appeal, Appellants contend the court abused its discretion by entering the stay.

We do not reach the relative merits of Callahan's constitutional claim because we conclude the claim is barred by the statute of limitations. Callahan's limitations period began to run on July 31, 2002, when he selected lethal injection as the method by which he would be put to death, and expired two years later, on July 31, 2004. In light of the fact Callahan's complaint was filed more than two years beyond the limitations period, the district court abused its discretion by entering a stay of execution. We now vacate that decision.

# I. BACKGROUND

The full details of Callahan's crime are set forth in *Callahan v. Campbell*, 427 F.3d 897, 903-10 (11th Cir. 2005). In short, on February 3, 1982, Callahan abducted 26-year-old Rebecca Suzanne Howell from a laundromat in Jacksonville, Alabama. He murdered her, then dumped her body in a creek, where it was discovered two weeks later.[1]

On June 26, 1982, Callahan was convicted of a capital offense, and shortly thereafter was sentenced to death. The Alabama Supreme Court reversed Callahan's conviction and sentence after finding incriminating statements had been admitted improperly, and the case was remanded for a new trial. *Ex parte Callahan*, 471 So. 2d 463 (Ala. 1985). At the second trial, the jury again found Callahan guilty, and a sentence of death was re-imposed. Both the Alabama Court of Criminal Appeals and the Alabama Supreme Court affirmed Callahan's conviction and sentence. *Callahan v. State*, 557 So. 2d 1292 (Ala. Crim. App. 1989); *aff'd*, *Ex parte Callahan*, 557 So. 2d 1311 (Ala. 1989).

Callahan's conviction and sentence became final on October 1, 1990, when the United States Supreme Court denied his petition for certiorari. *See Callahan v.*

---

[1] Although Callahan was not charged with rape, forensic evidence suggested Howell was sexually assaulted prior to her death.

*Alabama*, 498 U.S. 881, 111 S. Ct. 216 (1990).  Callahan then filed a state

postconviction motion.  The trial denied the motion, and the court of appeals

affirmed the denial.  *Callahan v. State*, 767 So. 2d 380 (Ala. Crim. App. 1999).  On

March 31, 2000, the Alabama Supreme Court denied certiorari.  *Ex parte*

*Callahan*, 767 So. 2d 405 (Ala. 2000).

On March 29, 2001, Callahan petitioned for a writ of habeas corpus in the

United States District Court for the Northern District of Alabama.  Twice the

district court granted relief, and twice this court reversed.  *See Callahan v. Haley*,

313 F. Supp. 2d 1252 (N.D. Ala. 2004), *vacated and remanded sub. nom. Callahan*

*v. Campbell*, 396 F.3d 1287 (11th Cir. 2005); *Callahan v. Campbell*, 427 F.3d 897

(11th Cir. 2005).  On October 10, 2006, the Supreme Court denied Callahan's

petition for a writ of certiorari on his habeas claims.  *Callahan v. Allen*, — U.S. —,

127 S. Ct. 427 (2006).

At the time Callahan was sentenced, Alabama executed inmates by

electrocution.  On July 1, 2002, Alabama adopted lethal injection as its preferred

form of execution and gave inmates already on death row 30 days in which to

select electrocution as the method by which they would die.  Callahan did not opt

out of the new protocol, and therefore became subject to death by lethal injection

on July 31, 2002.

On October 11, 2006, one day after the Supreme Court denied Callahan's request for certiorari on the denial of his federal habeas petition, Callahan filed a complaint under 42 U.S.C. § 1983, alleging Alabama's lethal injection protocol violates his Eighth Amendment right to be free from cruel and unusual punishment. Appellants moved for summary judgment, contending the claim was barred by the statute of limitations and Callahan had failed to adduce evidence from which a rational trier of fact could conclude Alabama's method of execution violates his constitutional rights. In addition, Appellants urged the court to find the lawsuit equitably barred because of Callahan's delay in filing it. After denying Appellants' motion for summary judgment in its entirety, the district court set trial for October 3, 2007.

On September 25, 2007, eight days before the trial was slated to begin, Alabama announced it would be reviewing its execution protocol. That same date, the United States Supreme Court granted certiorari in *Baze v. Rees*, — U.S. —, 128 S. Ct. 34 (Sept. 25, 2007), a case brought by a death row inmate raising a challenge to Kentucky's nearly identical lethal injection protocol.[2]

---

[2] Two days later, Alabama Governor Bob Riley granted a 45-day reprieve to another condemned prisoner, Thomas Arthur, to allow the Alabama Department of Corrections to review its lethal injection protocol.

In the midst of these events, the district court determined it was prudent to continue the case, despite the parties' readiness for trial. On October 26, 2007, the State filed its revised lethal injection protocol, which differed only minimally from prior procedures. Five days later, on October 31, 2007, the Alabama Supreme Court set Callahan's execution date for January 31, 2008.[3]

Callahan moved for a stay of execution, arguing his claim was timely brought and had a significant possibility of success. The district court agreed, and granted the stay. Appellants now ask this court to find the entry of a stay was an abuse of discretion.

## II. ANALYSIS

When a capital defendant seeks to challenge on constitutional grounds the method by which he will be executed, courts must balance the competing interests of the defendant and the State. A defendant's interest in being free from cruel and unusual punishment is primary; however, the State's interest in effectuating its judgment remains significant. *Nelson v. Campbell*, 541 U.S. 637, 644, 124 S. Ct. 2117, 2123 (2004) ("State retains a significant interest in meting out a sentence of death in a timely fashion"). The Supreme Court has repeatedly admonished courts

---

[3] On the same day, the Alabama Supreme Court also set a new execution date for Thomas Arthur. *See supra*, n.1.

6

regarding their obligation to guard against litigation brought solely for the purpose

of delay. *Hill v. McDonough*, 547 U.S. —, 126 S. Ct. 2096, 2103 (2006) (noting

"courts should not tolerate abusive litigation tactics" in constitutional tort cases

challenging methods of execution). Courts have given special attention to the

timeliness of method of execution challenges brought under 42 U.S.C. § 1983.

Courts assessing the timeliness of a § 1983 method of execution challenge

may do so in either of two ways. The first is to ask whether the action has been

timely brought under the applicable statute of limitations. The second involves an

equitable inquiry that arises when a prisoner requests a stay of execution in order

to fully litigate his constitutional claim. In the latter circumstance, courts ask

whether the litigant "unreasonably delayed" before filing his claim and should

therefore be barred from raising his challenge on the eve of execution.

While acknowledging the existence of a statute of limitations for § 1983

claims, our prior cases addressing method of execution challenges have focused

exclusively on the second inquiry, employing an equitable analysis to determine

whether a capital litigant's challenge has been brought too late to warrant a stay of

execution. *See, e.g.*, *Schwab v. Sec., Dep't of Corr.*, 507 F.3d 1297, 1301 (11th

Cir. 2007). We have yet to determine how the relevant statute of limitations

applies to inmates who wish to bring a § 1983 challenge to the method of their

execution, because the question has not been placed squarely before us.

In *Jones v. Allen*, 485 F.3d 635 (11th Cir. 2007), we affirmed on equitable

grounds the district court's denial of a stay of execution in a case closely analogous

to this one.[4] Although we took note of the district court's finding that the claim

was not barred by the statute of limitations, we did not review that decision

because the Government had not cross-appealed. *Id.* at 638 n.1. We have dealt

similarly with other cases, all of which involved appeals by a defendant, rather

than by the Government. *See, e.g.*, *Williams v. Allen*, 496 F.3d 1210, 1215 n.2

(11th Cir. 2007) ("Because we affirm on equitable grounds the district court's

judgment dismissing Williams's challenge to the State's method of execution, we

need not address the State's alternative argument that Williams's suit is barred by

the statute of limitations."); *Grayson v. Allen*, 491 F.3d 1318, 1326 n.5 (11th Cir.

2007).

There is a close connection in this case between the district court's decision

to impose a stay and its finding that Callahan's claim was timely filed. In granting

---

[4] Under nearly identical circumstances, Jones raised a claim identical to the one
Callahan brings here. We found Jones had unreasonably delayed in bringing his § 1983
challenge even though he filed it while his petition for a writ of certiorari on the denial of his
habeas petition was still pending in the United States Supreme Court. *Jones*, 485 F.3d at 638.
By contrast, Callahan filed his § 1983 challenge a day *after* his petition for certiorari was denied.

Callahan's request for a stay, the district court properly engaged in a traditional equitable analysis, considering, among other things, whether Callahan had shown "a significant possibility of success on the merits" of his § 1983 claim. *See Hill*, 547 U.S. at —, 126 S. Ct. at 2104. The district court concluded Callahan made the required showing.

We review the district court's grant of preliminary injunctive relief for abuse of discretion. *See Grayson*, 491 F.3d at 1319 (applying abuse of discretion standard to review denial of stay in § 1983 action). It would be "a paradigmatic abuse of discretion for a court to base its judgment on an erroneous view of the law," *Schlup v. Delo*, 513 U.S. 298, 333, 115 S. Ct. 851, 870 (1995) (O'Connor, J., concurring), and the district court's decision would be erroneous if we were to find the claim barred by the statute of limitations, as Appellants contend it was.

All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought. *Wilson v. Garcia*, 471 U.S. 261, 275-76, 105 S. Ct. 1938, 1946-47 (1985). Callahan's claim was brought in Alabama, where the governing limitations period is two years. Ala. Code § 6-2-38; *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989) (en banc). Therefore, in order to

have his claim heard, Callahan was required to bring it within two years from the date the limitations period began to run.

It has long been the law of this Circuit that in § 1983 actions "the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987) (internal quotations omitted). What does that mean as applied to a capital litigant seeking injunctive relief for an injury that has not yet occurred, but can be reasonably anticipated? The question is one of first impression in this Circuit.

There are at least four potentially viable dates on which Callahan's claim could accrue: (1) October 1, 1990, the date his death sentence became final; (2) July 31, 2002, the date on which it became clear Callahan would die by Alabama's lethal injection protocol (rather than by any other method); (3) October 10, 2006, the date the denial of his federal habeas petition became final; and (4) the day of his execution, when the ultimate injury will occur. It is well established that a federal claim accrues when the prospective plaintiff "knows or has reason to know of the injury which is the basis of the action." *Corn v. City of Lauderdale Lakes*, 904 F.2d 585, 588 (11th Cir. 1990). Applying that principle to the facts of this case, we reject execution and the completion of federal habeas

review as the points from which to measure the limitations period in a method of execution challenge.  We hold a method of execution claim accrues on the later of the date on which state review is complete, or the date on which the capital litigant becomes subject to a new or substantially changed execution protocol.  For the reasons set forth below, we conclude Callahan's claim accrued on July 31, 2002, when he selected lethal injection as the method by which he would be executed.

A.  *Date of Execution*

The district court held Callahan's claim could not accrue until the moment of execution because the statute of limitations could not "attach to an act that has yet to occur and a tort that is not yet complete."  Dist. Ct. Order dated Nov. 16, 2007, dkt. # 146, at 9-10.  *See also Grayson v. Allen*, 499 F. Supp. 2d 1228, 1235 (M.D. Ala. 2007); *Jones v. Allen*, 483 F. Supp. 2d 1142, 1153 (M.D. Ala. 2007). Although we agree with the general principle recited by the district court, we disagree with its application to cases such as this one, where the ultimate injury is reasonably likely and wholly foreseeable.

In a recent challenge to the lawfulness of detention brought under § 1983, the Supreme Court explained accrual under the statute of limitations "occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief."  *Wallace v. Kato*, — U.S. —, 127 S. Ct. 1091, 1095

(2007) (internal quotations omitted). It is clear a capital litigant may file suit and obtain injunctive relief long before he is executed. Therefore, it is difficult to reconcile *Wallace* with the district court's holding that the limitations period would not begin to run until after the litigant has died (at which time the claim would be simultaneously mooted). *Cf. Cooey v. Strickland*, 479 F.3d 412, 418 (6th Cir. 2007) (noting problems with selecting date of execution as date of accrual in method of execution claims).

Moreover, to hold the limitations period does not begin to run until the moment of death would be inconsistent with the manner in which we have treated other § 1983 claims seeking prospective relief, such as those involving challenges to parole eligibility. For example, in *Lovett v. Ray*, 327 F.3d 1181 (11th Cir. 2003), we dismissed as time barred a prisoner's complaint that a 1998 change in parole procedure would render him ineligible for parole consideration in 2006. We held the litigant "knew, or should have known, all of the facts necessary to pursue a cause of action" in 1998, but nonetheless waited beyond the two year limitation period before filing his claim. *Id.* at 1182. Despite the fact the plaintiff was seeking prospective relief against a future injury, we held the claim was untimely. *Id.* at 1183. *See also Brown v. Georgia Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003) (reiterating statute of limitations begins to run from date

facts which would support cause of action should be apparent to person with reasonably prudent regard for his rights).

For these reasons, we conclude death is not the moment from which to measure the accrual of the limitations period for method-of-execution claims brought under § 1983, and we turn to the second option, the date on which federal habeas review ends.

## B. Completion of Federal Habeas Review

Callahan filed this lawsuit one day after the Supreme Court denied his petition for review of the denial of his federal habeas petition. Were we to conclude the denial of certiorari is the moment from which to measure the limitations period, Callahan's complaint would be timely. We do not, however, adopt the completion of habeas review as the moment of accrual because doing so would prolong unnecessarily the time during which a litigant should reasonably anticipate the need to file suit and would fail to show proper respect for principles of federalism.

Respect for the equality and independence of state courts is a cornerstone of our judicial system. Under well-established principles of federalism, federal courts operate within

> a system in which there is sensitivity to the legitimate interests of both
> State and National Governments, and in which the National

13

> Government, anxious though it may be to vindicate and protect federal
> rights and federal interests, always endeavors to do so in ways that
> will not unduly interfere with the legitimate activities of the States.

*Younger v. Harris*, 401 U.S. 37, 44, 91 S. Ct. 746, 750-51 (1971).  These principles

apply with special force in matters of criminal law.  *McCleskey v. Zant*, 499 U.S.

467, 491, 111 S. Ct. 1454, 1469 (1991) ("Our federal system recognizes the

independent power of a State to articulate societal norms through criminal law; but

the power of a State to pass laws means little if the State cannot enforce them.").

Federal review of state court judgments, while an important check on possible

constitutional abuses, should be carried out in a timely fashion to prevent

unnecessary interference with a state's authority.

   In considering when a method-of-execution claim accrues under § 1983, we

are especially mindful of the Antiterrorism and Effective Death Penalty Act of

1996 (AEDPA), which Congress passed "to reduce delays in the execution of state

and federal criminal sentences, particularly in capital cases, . . . and to further the

principles of comity, finality, and federalism" by curtailing the ability of federal

habeas courts to review state court judgments.  *Woodford v. Garceau*, 538 U.S.

202, 206, 123 S. Ct. 1398, 1401 (2003) (internal quotations omitted).  Although

method-of-execution challenges brought under § 1983 are not governed by

AEDPA, they do "fall at the margins of habeas," *Nelson*, 541 U.S. at 646,

124 S. Ct. at 2124; *Cooey*, 479 F.3d at 421, and therefore implicate many of the same comity concerns AEDPA was designed to address. These concerns counsel away from setting the moment of accrual at the end of federal habeas review, since doing so would provide capital defendants with a means of delaying execution even after their sentences have been found lawful by both state and federal courts.

As an example, consider the State of Alabama. It is well known in this Circuit that "it is common practice for the State to ask the Alabama Supreme Court to set an execution date for a death-row inmate shortly after the United States Supreme Court has denied certiorari review of the petitioner's federal habeas petition," *Williams*, 496 F.3d at 1213, which as "a matter of common sense . . . eliminates the last possible obstacle to execution," *Jones*, 485 F.3d at 639-40 n.2.[5] Were we to hold a § 1983 method-of-execution challenge accrues on the date federal habeas review ends, we would effectively provide capital defendants with a veto power over the state's ability to effectuate its judgment at the close of federal habeas review. *Cf. Thompson v. Wainwright*, 714 F.2d 1495, 1506 (11th Cir. 1983) ("Each delay, for its span, is a commutation of a death sentence to one of imprisonment.").

---

[5] It is not clear why Alabama abandoned its standard procedure in this case, waiting until well after Callahan's federal habeas review was finished before asking the Alabama Supreme Court to set the date of his execution. It may have been mere fortuity.

Furthermore, in pinpointing the moment a § 1983 claim accrues, we remain mindful of our own equity jurisprudence. Although the Supreme Court has sanctioned the filing of § 1983 claims challenging the constitutionality of execution methods, the Court has emphasized that the availability of § 1983 litigation does not diminish the interest of states and crime victims "in the timely enforcement of a sentence," and does not "deprive federal courts of the means to protect" that interest. *Hill*, 547 U.S. at —, 126 S. Ct. at 2104 ( "[F]ederal courts can and should protect States from dilatory or speculative suits."). To protect this interest, courts apply a strong equitable presumption against a stay of execution "where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Nelson*, 541 U.S. at 650, 124 S. Ct. at 2126; *Schwab*, 507 F.3d at 1301.

Following that reasoning, we have suggested a capital litigant bringing a § 1983 claim in Alabama can foresee his complaint will be untimely if he waits to file it until the completion of federal collateral review. *Jones*, 485 F.3d at 639-40 n.2 ("Waiting to file suit until the Supreme Court has denied certiorari review of an inmate's federal habeas petition . . . is simply too late to avoid the inevitable need for a stay of execution."). If we were to hold the limitations period begins to run when federal habeas review ends, claims which have just accrued under the

16

Alabama statute of limitations would always be untimely as a matter of equity.
Such a rule would be indefensible, and we decline to adopt it.

## C. Date Death Sentence Became Final

The next possible accrual date is the day on which a litigant's death sentence
becomes final following direct appeal. Ordinarily, this is the date on which a
capital defendant's § 1983 challenge to the method of his execution will accrue
because it is the date by which the relevant facts (*i.e.*, the manner and certainty of
execution under state law) should be apparent to a person with a reasonably
prudent regard for his rights. *See Mullinax*, 817 F.2d at 716. *Accord Cooey*, 479
F.3d at 421-22 (finding completion of direct review appropriate moment from
which to measure accrual); *Neville v. Johnson*, 440 F.3d 221, 222 (5th Cir. 2006)
("A challenge to a method of execution may be filed any time after the plaintiff's
conviction has become final on direct review.").

There are several reasons why the completion of state review will ordinarily
trigger the statute of limitations for a challenge to the method of execution. First,
by requiring a defendant to wait to bring a claim after direct review is complete (as
opposed, say, to when the sentence is first imposed), we ensure claims are not
brought prematurely, before state courts have had an adequate opportunity to
correct any infirmities in the defendant's conviction or sentence. Second, by

17

requiring a claim to be brought within two years of the completion of state review, we guarantee defendants' constitutional challenges to the method of their execution can be fully adjudicated and at the same time protect states from unnecessary interference in carrying out their judgments. Finally, selecting the completion of direct appeal as the moment a § 1983 claim accrues has the added benefit of mirroring the time at which a defendant's habeas limitations period begins to run, *see* 28 U.S.C. § 2244(d)(1)(A), thereby simplifying the postconviction labyrinth of filing deadlines through which capital litigants must navigate.

Callahan's conviction became final in 1990, sixteen years before this case was filed. Nevertheless, the statute of limitations was not triggered by the completion of state review in this case because, at that time, Alabama had not yet adopted lethal injection as a form of execution. Until it became clear that lethal injection was the method by which he would die, Callahan lacked a "complete and present cause of action," *Wallace*, 127 S. Ct. at 1095, and his claim did not accrue. We turn, therefore, to the final proposed triggering date: July 31, 2002, the day Callahan selected lethal injection as the means by which he will die.

*D. Date the Execution Protocol Became Applicable to Callahan*

As we recognized in *Jones*, the Alabama Legislature changed the State's preferred method of execution from electrocution to lethal injection in July 2002.

485 F.3d at 637.  Current death row inmates, including Jones and Callahan, were given 30 days in which to choose electrocution as the means by which they would prefer to die.  *Id.*  Any inmates who had not selected electrocution by that time would be subject to death by lethal injection.  *Id.* (citing Ala. Code § 15-18-82.1 (2006 Cumulative Supp.)).  By failing to choose electrocution by July 31, 2002, Callahan chose to die by lethal injection.

Although *Jones* was decided on equitable grounds, we noted Jones' lethal injection challenge ripened in July 2002, when it became clear he would be executed by lethal injection:

> We see no convincing reason why, after Alabama made lethal injection its primary method of execution, Jones could not have brought his method-of-execution challenge sooner than he did.  Jones knew of the State's intention to execute him at least by July 2002.  "It was during that period—in which the execution was not so much an imminent or impending danger as it was an event reasonably likely to occur in the future—that Jones needed to file this challenge."

*Id.* at 640 (quoting *Harris v. Johnson*, 376 F.3d 414, 418 (5th Cir. 2004)).  There is no doubt Callahan, too, was free to challenge the method of his execution beginning July 31, 2002, by which time the facts which would support a cause of action should have been apparent to any person with a reasonably prudent regard

for his rights.[6] *Mullinax*, 817 F.2d at 716.  The statute of limitations began to run at that time; therefore, absent a significant change in the state's execution protocol (which did not occur in this case), Callahan was required to file his Eighth Amendment challenge by July 31, 2004—more than two years before his complaint was filed.

Unguided by a statement of this Circuit's position on the relevant statute of limitations, it is understandable why the court (and the parties) placed more emphasis on the merits of Callahan's Eighth Amendment challenge and the equities of the stay than on the threshhold question of whether the complaint was barred by the statute of limitations.  Nevertheless, in light of our holding today, we conclude the district court abused its discretion by determining Callahan had a significant possibility of success on the merits of his claim when, in fact, the complaint was filed beyond the applicable two-year statute of limitations.  Consequently, the district court's order staying the execution is **VACATED.**

---

[6] The dissent notes Alabama's execution protocol is subject to change.  Although that is true, neither party suggests the lethal injection protocol has undergone any material change between 2002 and the present.

WILSON, Circuit Judge, dissenting:

I would affirm the entry of the stay based on the rationale articulated by Judge Gilman in his dissent in *Cooey v. Strickland*, 479 F.3d 412 (6th Cir. 2007). In my view, a method-of-execution challenge brought under § 1983 does not accrue until the prisoner knows or has reason to know the facts giving rise to his claim and the prisoner's execution becomes imminent. *See id.* at 426 (Gilman, J., dissenting). For accrual purposes, the execution becomes imminent when the prisoner has exhausted all of his state and federal challenges to the validity of the sentence. *See id.* I find this approach preferable to that adopted by the majority, which effectively requires a death-sentenced prisoner to file a method-of-execution claim years before his execution is to take place, during which time the challenged protocol could be materially changed. Accordingly, I respectfully dissent.

As the majority correctly notes, it is well established that a federal claim accrues when the prospective plaintiff "knows or has reason to know of the injury which is the basis of the action." *Corn v. City of Lauderdale Lakes*, 904 F.2d 585, 588 (11th Cir. 1990). The majority holds that the facts supporting Callahan's § 1983 action were or should have been apparent to him on July 31, 2002, when the 30-day period within which he could choose electrocution as his means of execution expired. I believe that this conclusion misconstrues the nature of the

21

injury that Callahan seeks to enjoin.  Callahan's § 1983 action is not based on the

fact of his death sentence or even on the fact that he is to be executed by lethal

injection.  Rather, Callahan is asserting that the specific lethal injection protocol

presently employed by Alabama is likely to cause him undue pain and suffering

when his execution is carried out.  This claim could have begun to accrue only (1)

when Callahan knew or had reason to know the details of Alabama's lethal

injection protocol and (2) when his execution became imminent.

Contrary to the majority's conclusion, neither of these circumstances existed

in July of 2002.  Although Alabama adopted lethal injection as its sole method of

execution at that time, its specific protocol is neither fixed by law nor readily

accessible.  The protocol is a creature of regulation, not statute, and thus it is

subject to change at any time by the Alabama Department of Corrections.  As is the

case in other states, "[n]o statutory framework determines when or how such

changes may occur.  Nor is there a framework governing when, or even if, such

changes will be publicized."  *Cooey v. Strickland*, 479 F.3d 412, 427 (6th Cir.

2007) (Gilman, J., dissenting).  Indeed, it appears that Alabama has revised the

protocol on a number of previous occasions, and there is reason to believe that its

efforts to promulgate these changes have been inadequate.  *See Jones v. Allen*, 483

F. Supp. 2d 1142, 1146 n.2 (M.D. Ala. 2007) (noting that Alabama defendants

"admitted that earlier revisions to the protocol were made . . . but that after diligent search they [were] unable to locate the version of the protocol that existed before such changes were made").  Adding to this uncertainty, the State of Alabama keeps the specifics of its lethal injection protocol a secret.  *Siebert v. Allen*, 2007 WL 3047086, at *1 (M.D. Ala. Oct. 17, 2007).  I thus cannot accept the majority's conclusion that Callahan's cause of action began to accrue five years before his execution date was set, during which time Alabama could, and in fact did, amend its lethal injection protocol.[1]

A better approach would be to fix the date of accrual when Callahan knew or had reason to know the details of the protocol to be used in his execution and when his habeas challenge to his sentence was exhausted.  Placing the accrual date after the completion of habeas proceedings would have "provide[d] clarity and certainty to both the death-sentenced inmate and the State that the sentence [was] final and not susceptible to attack, that the execution date [was] set, and that the protocol for [the] execution [was] likely fixed."  *Cooey*, 479 F.3d at 429 (Gilman, J., dissenting).  Moreover, in future cases, this approach would avoid the problematic outcomes that the majority's decision will produce: that death-sentenced prisoners will be required to pursue method-of-execution challenges several years prior to

---

[1] Alabama most recently revised its lethal injection protocol on October 26, 2007.

23

their executions and during the same time they are challenging their convictions and sentences on habeas.[2]

Finally, the majority expresses the concern that placing the accrual date after the completion of habeas proceedings would enable prisoners to "veto" the state's ability to effectuate its judgments by unreasonably delaying their § 1983 actions. However, the Supreme Court has recognized that prisoners seeking stays of execution must establish a significant likelihood of success on the merits, including overcoming a presumption against entry of a stay where the claim could have been brought earlier. *Nelson v. Campbell*, 541 U.S. 637, 650, 124 S. Ct. 2117, 158 L. Ed. 2d 924 (2004). In my view, therefore, the majority's concern in this regard is unpersuasive.

For these reasons, I respectfully dissent.

---

[2] It is noteworthy that in *Jones v. Allen*, 483 F. Supp. 2d 1142 (M.D. Ala. 2007), the court recognized that according to general tort principles, "'the statute [of limitations] does not usually begin to run until the tort is complete,'" and a "'tort is ordinarily not complete until there has been an invasion of a legally protected interest of the plaintiff.'" *Id*. at 1148 (alterations in original) (quoting Rest. 2d Torts § 899 cmt. c). As such, where a defendant challenges the constitutionality of an event that has not yet occurred, i.e., the method of execution, the statute of limitations inquiry is not applicable; rather, only equitable considerations (such as those associated with comity, finality, federalism, and laches) are relevant. *Id*. at 1149-51.